## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TIMOTHY MCLAUGHLIN, | ) | Civil Action No.   21-832 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| THE INTERNATIONAL | ) | |
| BROTHERHOOD OF | ) | |
| TEAMSTERS, LOCAL 249, | ) | |
| MARC SCOTT, KATIE SCOTT, | ) | |
| BYRON ROLAND, | ) | |
| DON KRAUS, | ) | |
| MICHAEL A. CEOFFE, | ) | |
| FRANK CONFORTI, | ) | |
| JOSEPH ROSSI, | ) | |
| CBS STUDIOS, INC., and | ) | |
| TRISTAR PICTURES, INC., | ) | FILED ELECTRONICALLY |
| | ) | |
| Defendants. | ) | JURY TRIAL DEMANDED |

### COMPLAINT IN CIVIL ACTION

Plaintiff Timothy McLaughlin ("McLaughlin"), by and through undersigned counsel, files

this Complaint in Civil Action stating as follows:

### I. PARTIES

1.      McLaughlin is an individual who resides in Allegheny County, Pennsylvania.

2.      Local 249, International Brotherhood of Teamsters, is a labor union with its principal

place of business at 4701 Butler St., P.O. Box 40128, Pittsburgh, PA 15201.

3.      Marc Scott ("Scott") is an individual who resides in Allegheny County, Pennsylvania.

4.      Katie Scott ("Ms. Scott"), the wife of Mark Scott, is an individual who resides in

Allegheny County, Pennsylvania.

5.      Byron Roland ("Roland") is an individual who resides in Allegheny County,

Pennsylvania.

6.      Don Kraus ("Kraus") is an individual who resides in Butler County, Pennsylvania.

7.      Michael A. Ceoffe ("Ceoffe") is an individual who resides in Allegheny County, Pennsylvania.

8.      Frank Conforti ("Conforti") is an individual who resides in Allegheny County, Pennsylvania.

9.      Joseph Rossi ("Rossi") is an individual who resides in Allegheny County, Pennsylvania.

10.     Both Ceoffe and Rossi are former presidents of Local 249.

11.     CBS Studios, Inc. is an American television production company located at 4024 Radford Ave, Studio City, CA 91604 that does business in the Commonwealth of Pennsylvania.

12.     TriStar Pictures, Inc. is an American film studio and production company located at 10202 West Washington Boulevard, Culver City, CA 90232 that does business in the Commonwealth of Pennsylvania.

## II.  JURISDICTION

13.     The jurisdiction of this Court over the matters set forth in this Complaint are found at 28 U.S.C. § 1331, 28 U.S.C. § 1367, and at 29 U.S.C. § 412.

## III.  VENUE

14.     The facts set forth in this Complaint occurred in Allegheny County, Pennsylvania, in the Western District of Pennsylvania; therefore, venue is appropriate in this Court.

## IV.  ADMINISTRATIVE EXHAUSTION

15.     On January 4, 2019, McLaughlin filed pro se a charge with the Equal Employment

Opportunity Commission ("EEOC") against CBS Studios, Inc., its Vice President of Labor Relations Jay Barnett, and Roland alleging that the respondents failed to hire him as a Teamster Movie Driver for a production that began April 3, 2018 in retaliation for filing earlier EEOC charges.

16.     Based on information and belief, this charge was not properly processed by the EEOC based in whole or in part due to a government shutdown that was occurring at the time of filing. McLaughlin sent a follow-up letter to the EEOC regarding the charge.

17.     On or about November 25, 2019, McLaughlin cross-filed a charge of age discrimination and retaliation with the EEOC and the Pennsylvania Human Relations Commission ("PHRC") against Sony Pictures Entertainment, Inc. [proper party TriStar Pictures, Inc.], asserting in the body of the charge that Kraus and Conforti failed to hire him as a Teamster Movie Driver.

18.     In June 2020, McLaughlin dual-filed a charge of age discrimination and retaliation with the EEOC and PHRC against Local 249, Scott, Ceoffe, Kraus, and Rossi asserting they failed to hire him as a Teamster Movie Driver.

19.     More than one year has passed since the November 25, 2019 PHRC charge, therefore, Plaintiff has exhausted his administrative remedies.

20.     When the other charges have been administratively exhausted, Plaintiff will amend to add claims arising out of those charges.

## V.  STATEMENT OF FACTS

21.     Tim McLaughlin was born in 1952 and currently is 68 years of age.

22.     McLaughlin, a truck driver who holds a commercial driver's license ("CDL"), is a Member of Local 249.

23.     McLaughlin specializes in work as a driver on movie and television productions

("Teamster Movie Driver").

24.     From 2001 to 2010, McLaughlin worked consistently as a Teamster Movie Driver including on such projects as "Adventureland," "Love and Other Drugs," and "Warrior."

25.     McLaughlin has driven almost every piece of movie equipment, and he was elected Union Steward on nearly every movie he worked.

26.     The Teamster Movie Driver position is attractive to Local 249 Members including because it provides a relatively high wage rate with substantial opportunities for overtime hours, and drivers can earn a substantial income as long as the production lasts.

27.     Local 249 represents Teamster Movie Drivers on filming sites in the Pittsburgh/ Western Pennsylvania area.

28.     Local 249 enters into agreements with television and movie producers as the exclusive collective bargaining representative of the drivers who are hired; the agreement requires the producers to provide to the Union a list of all vehicles and equipment being utilized prior to the start of production to ensure proper assignment of personnel; the agreement requires the Union to maintain a referral process in order to supply qualified employees to the producer in a timely manner; and the agreement also states that the Union will provide the producers with the applications/résumés of any and all interested Members.

29.     Local 249 operates a "hiring hall" through which its Members apply for positions as Teamster Movie Drivers.

30.     In order to be considered as a Teamster Movie Driver, Local 249 requires its Members to submit annual applications and it promises to forward those applications for hiring purposes.

31.     All or essentially all Teamster Movie Driver applications are funneled through Local 249 and its officials.

32.     Local 249 claims that the local Teamster Movie Driver hiring decisions are made by out-of-town movie and television production companies pursuant to a "producer's choice" system, and that it bears no responsibility as to which Members are hired and those who are not.

33.     In reality, the out-of-town producers do not make the hiring decisions; the Teamster Movie Driver hiring decisions are made by local Transportation Coordinators and Transportation Captains, all or almost all of whom are Members of Local 249, with the knowledge and acquiescence of Local 249 and its Officers, who from time to time make Transportation Captains appointments and recommend certain individuals be hired as Teamster Movie Drivers.

34.     The "producer's choice" system has been criticized by the Independent Review Board, a governmental body established to oversee the national organization of the International Brotherhood of Teamsters, as fostering nepotism and favoritism.

35.     Based upon information and belief, Roland was instrumental in the initial blackballing of McLaughlin.  McLaughlin had complained about Roland's lewd behavior and that he should not be in a position to represent the drivers or the producers nor should he be in a position to hire drivers.

36.     Roland hired a significantly younger craft service worker ahead of McLaughlin, even though he had ten years of experience as an on-set driver of movie trucks.

37.     Many other Union Locals involved in film production distribute driver jobs on the basis of seniority.

38.     Local 249 earns significant amounts of money from its Members who work on movie

and television productions.

39.     For example, Local 249 charges its Members $5.00 a day for every day they work as Teamster Movie Drivers, purportedly to support "efforts to bring move productions into the Western Pennsylvania area and insure that the transportation work on future movie productions is performed by organized labor under a Local 249 collective bargaining agreement."

40.     Local 249 utilizes its standard form contract prepared for movie productions for all movie and television production work.

41.     According to Local 249 procedures, when the CBA provides that the Local shall designate the Captain(s) on any movie production, the designation is to be made by the Executive Board, and the Union reserves the right to appoint a Co-Captain subject to the approval of the Executive Board.

42.     McLaughlin is qualified to work as a Teamster Movie Driver based on his Union membership, valid Commercial Driver's License Class A, completed annual applications to work as a Teamster Movie Driver, extensive experience driving all types of vehicles, numerous positive references, and long-time successful work as a Teamster Movie Driver.

43.     Despite McLaughlin's qualifications and annual applications to work as a Teamster Movie Driver, he has been completely shut out of work in that area from 2011 to the present and, as a result, has suffered tremendous financial losses and other damages.

44.     Based on information and belief, Local 249 and the other Defendants over the years has repeatedly failed to hire and/or recommend McLaughlin as a Teamster Movie Driver and/or interfered with McLaughlin's prospective employment as a Teamster Movie Driver based on illegal discriminatory and retaliatory motives.

6

45.     Based on information and belief, Marc Scott is a Transportation Coordinator who over the years has repeatedly failed to hire McLaughlin as a Teamster Movie Driver based on illegal discriminatory and retaliatory motives.

46.     Based on information and belief, Byron Roland is a Transportation Coordinator and Transportation Captain who over the years has repeatedly failed to hire McLaughlin as a Teamster Movie Driver based on illegal discriminatory and retaliatory motives.

47.     Based on information and belief, Don Kraus is a Transportation Coordinator and Transportation Captain who over the years has repeatedly failed to hire McLaughlin as a Teamster Movie Driver based on illegal discriminatory and retaliatory motives.

48.     Based upon information and belief, Frank Conforti is a Transportation Coordinator and Transportation Captain who over the years has repeatedly failed to hire McLaughlin as a Teamster Movie Driver based on illegal discriminatory and retaliatory motives.

49.     Based upon information and belief, Katie Scott is a Transportation Coordinator and Transportation Captain who over the years has repeatedly failed to hire McLaughlin as a Teamster Movie Driver based on illegal discriminatory and retaliatory motives

50.     Based on information and belief, Mike Ceoffe is the former Local 249 President (2015-2018) and Vice President (2012-2015) who over the years has repeatedly failed to hire and/or recommend McLaughlin as a Teamster Movie Driver and/or interfered with McLaughlin's prospective employment as a Teamster Movie Driver based on illegal discriminatory and retaliatory motives.

51.     Since approximately 2011, McLaughlin has complained repeatedly both internally to Local 249 and externally to administrative agencies that he and other qualified drivers have been

mistreated and shut out as Teamster Movie Drivers based on illegal, discriminatory, and retaliatory reasons.

52.     For example, in or about 2011, McLaughlin in his role as Union Steward successfully grieved on behalf of 23 Teamster Movie Drivers the failure to provide reimbursement for per diem and housing.

53.     McLaughlin was told by Paramount Vice President Jay Barnett that the failure to provide such reimbursement was the fault of Scott and Roland.

54.     In June 2011, McLaughlin forced the Rossi/Ceoffe administration to hold a meeting to discuss the discriminatory hiring of Marc Scott and Byron Roland.  Approximately 78 drivers attended.  The Union officials were pushing their phony "producers choice" hiring system to protect the Union from getting sued instead of a seniority system like any other union.  All Local 249 officers and agents appeared as did Local 249 attorney Robert Eberle, Esq.  McLaughlin has been blacklisted for advocating a seniority based hiring system.  A seniority based system would have disrupted their plans to redirect the lucrative Teamster Movie Driver positions to their friends, relatives, girlfriends, neighbors, etc.

55.     In or about 2011, McLaughlin chaired a Local 249 committee that advocated the adoption of a seniority system for distributing jobs on film productions.

56.     The Committee's written recommendations and proposed seniority system were ignored and rejected by Local 249 and its Officers, and never were brought up for a vote by Local 249 Members.

57.     In or about 2011, McLaughlin filed an unfair labor practice charge with the National Labor Relations Board ("NLRB").

58.     In or about 2011, McLaughlin filed a charge of age discrimination with the Equal Employment Opportunity Commission ("EEOC").

59.     During this time, McLaughlin also publicly opposed the election of Rossi as President of Local 249.

60.     In Fall 2011, McLaughlin complained about mistreatment to Local 249.

61.     By letter dated December 14, 2011, now-President Rossi rejected McLaughlin's claims.  Rossi backed his "producer" friends, Roland and Scott, over his own elected steward, McLaughlin.

62.     Among other things, Rossi indicated that Local 249 does not utilize the Teamster Movie Driver positions to reward or punish members for political reasons as McLaughlin suggested, and that Transportation Coordinators choose their Captains and then confer with the Captains about the driver applications forwarded by Local 249.

63.     Rossi also stated that Scott told him that he did not hire McLaughlin for a recent movie production because McLaughlin purportedly was "getting too close to the grips on the production" and had filed a charge with the NLRB.  McLaughlin was replaced by a Yellow Freight driver who was a friend of Ceoffe.

64.     Scott's justifications for failing to hire McLaughlin as relayed through Rossi's letter are pretextual including that McLaughlin was not "too close" to any grips and, even if he was, that is not a legitimate reason to deny work, and failing to hire McLaughlin because he filed a charge with the NLRB clearly is retaliatory.

65.     Even though McLaughlin had six years of experience driving at key grip, each of the aforementioned transportation coordinators and captains denied him work at this position.  All of

them were aware of McLaughlin's experience at key grip.

66.    Based on information and belief, Rossi had no prior experience as a Teamster Movie Driver.

67.    Nevertheless, as soon as he stepped down as Local 249 President in 2015, Rossi immediately was hired as a Teamster Movie Driver over numerous more qualified drivers including McLaughlin.

68.    Roland, who had been appointed as captain by new Local 249 President Ceoffe, had approved the hiring of Rossi over McLaughlin, even though the out-of-town transportation coordinator requested that McLaughlin be hired for the position.

69.    Based on information and belief, Transportation Coordinators and Captains hired Rossi as a Teamster Movie Driver as a reward because he stood up for and protected them against their critics, including McLaughlin and his claims of illegal, discriminatory, and retaliatory conduct.

70.    In or about 2014-15, McLaughlin publicly opposed the election of Ceoffe as President of Local 249.

71.    In Spring 2015, McLaughlin complained of mistreatment including blacklisting to Local 249.

72.    By letter dated May 20, 2015, then President Ceoffe rejected McLaughlin's claims.

73.    Ceoffe stated, *inter alia*, that the "expectation is that the producer will determine who to hire, and the captain then follows the producer's instructions to contact the individuals who are being selected."

74.    Based on information and belief, Ceoffe's "expectation" that the producer makes the hiring decisions was false, contrary to McLaughlin's own experience with hiring decisions, and

contrary to the statements made by former President Rossi in his letter to McLaughlin.

75.     For example, in 2015, an out-of-town transportation coordinator specifically asked the Transportation Captain/Coordinator, Roland, to hire McLaughlin for the Cinemax production of "Banshee," but his request was denied thereby showing that the Coordinator, Captains, and Local 249 are responsible for the hiring decisions and not the producers.

76.     Based on information and belief, Ceoffe had no prior experience as a Teamster Movie Driver.

77.     Nevertheless, as soon as he was voted out of office as Local 249 President in 2018, Ceoffe immediately was hired and continues to be hired as a Teamster Movie Driver over numerous more qualified drivers including McLaughlin.

78.     Based on information and belief, Transportation Coordinators and Captains hired Ceoffe as a Teamster Movie Driver as a reward because he stood up for and protected them from their critics, including against McLaughlin and his claims of illegal, discriminatory, and retaliatory conduct.

79.     In April 2015, McLaughlin filed a lawsuit against three production companies: Twentieth Century Fox, Summit, and The Walt Disney Co.; ultimately, this suit was settled in 2016.

80.     In May 2016,  McLaughlin filed–separately from the annual job application he filed with Local 249–an application to work as an on-set driver for "Mind Hunter" and he was not hired.

81.     In 2018, McLaughlin applied but was not hired for a CBS series entitled "$1."

82.     Roland was the Transportation Coordinator for "$1," and he hired Kraus and Conforti to work on that production.

83.     Based on information and belief, Roland failed to hire McLaughlin as a Teamster

Movie Driver for that production; however, he did hire Ceoffe who was less qualified than McLaughlin.

84.    Kraus and Conforti would later leave to work on "A Beautiful Day in the Neighborhood."

85.    When he was first hired to work on set in 2008, Conforti had no experience as a driver.  Previously, he had served as the wrestling coach for Rossi's son.

86.    It was claimed that McLaughlin was not hired for the job because he never actually applied or lacked the requisite mechanical skills.

87.    Those justifications are false and pretextual.

88.    McLaughlin applied for that job including based on the fact that he had submitted his annual application to Local 249, and Local 249 represents that it forwards all annual movie applications for consideration for all movie and television jobs.

89.    McLaughlin does not lack the requisite mechanical skills and, even if he did which is denied, McLaughlin has extensive experience driving the movie production equipment and never before has a purported lack of mechanical skills been used to disqualify a driver.

90.    Based on information and belief, the Transportation Coordinator and Captain hired a less qualified driver lacking the requisite mechanical skills instead of McLaughlin.

91.    In August 2018, McLaughlin requested Local 249 to recommend, as is permitted, to Conforti that McLaughlin be hired for "A Beautiful Day in the Neighborhood," but McLaughlin was not hired for this production.

92.    In August 2018, McLaughlin filed a charge with the NLRB alleging continued retaliation by Roland, CBS Studios, Inc., and its Vice President Jay Barnett.

93.     In September 2018, McLaughlin complained internally about continued retaliation and blacklisting to Local 249.

94.     On September 19, 2018, Local 249 Vice President Keith Frank wrote to Transportation Coordinator Kraus requesting him to explain the reason why McLaughlin was not hired for a recent movie production.

95.     This same letter was sent to Scott, with whom McLaughlin had worked for ten years. Scott never responded.

96.     McLaughlin followed up with Frank in November 2018.

97.     Frank indicated he would follow up with Kraus but to date McLaughlin has not heard back from Frank.

98.     Frank and current Local 249 President Kevin Schmidt are aware of the fact that McLaughlin has been blackballed from working as a driver.

99.     On January 4, 2019, McLaughlin filed pro se a charge with the EEOC against CBS Studios, Inc., its VP of Labor Relations Jay Barnett, and Roland alleging that the respondents failed to hire him as a Teamster Movie Driver for a production that began April 3, 2018 in retaliation for filing earlier EEOC charges.

100.    On or about November 25, 2019, McLaughlin cross-filed a charge of age discrimination and retaliation with the EEOC and the Pennsylvania Human Relations Commission against Sony Pictures Entertainment, Inc. [TriStar Pictures, Inc.], asserting in the body of the charge that Kraus and Conforti failed to hire him as a Teamster Movie Driver.

101.    In June 2020, McLaughlin dual-filed a charge of age discrimination and retaliation with the EEOC and PHRC against Local 249, Scott, Ceoffe, Kraus, and Rossi.

102.    Since 2011, Defendants have failed to hire McLaughlin for approximately 45 movies and television shows.

103.    More recently, McLaughlin applied for and was failed to hire for the following productions: "$1," "A Beautiful Day in the Neighborhood," "Ma Rainey's Black Bottom," "An American Pickle," "I'm not Okay With This," "I'm your Woman," "Lone Wolf," "Sweet Girl," and "Rust."

104.    Based on information and belief, Defendants failed to hire or participated in any decision not to hire McLaughlin as a Teamster Movie Driver because he engaged in protected speech and protected conduct.

105.    Based on information and belief, Defendants failed to hire or participated in any decision not to hire McLaughlin as a Teamster Movie Driver based on his age.

106.    Based on information and belief, Defendants hired or participated in any decision to hire sufficiently younger individuals ahead of McLaughlin to permit an inference of age discrimination.

107.    As a result of Defendant's retaliatory and discriminatory conduct, McLaughlin has suffered and continues to suffer damages including substantial lost wages and emotional distress.

108.     McLaughlin seeks a jury trial.

## VI.  COUNTS

### COUNT I: RETALIATION
### VIOLATION OF THE LABOR-MANAGEMENT REPORTING AND DISCLOSURE ACT (THE UNION BILL OF RIGHTS)
### 29 U.S.C. § 411 et seq.
### Plaintiff Timothy McLaughlin v. Defendants Local 249, Michael Ceoffe, Mark Scott, Katie Scott, Byron Roland, Don Kraus, Frank Conforti, and Joseph Rossi

109.    The preceding paragraphs are incorporated as if set forth at length herein.

110.    Plaintiff brings a claim against Local 249 and the individual Defendants under 29 U.S.C. § 411, the Bill of Rights of Members of Labor Organizations, pursuant to 29 U.S.C. § 412.

111.    Section 411 confers numerous rights on all labor organization members, including equal rights to vote and attend meetings, the right to "meet and assemble freely," and the right to express "any views, arguments, or opinions."  29 U.S.C. §§ 411(a)(1)—(2).

112.    Stated alternatively, Section 411 confers upon union members the same free speech rights that the U.S. Constitution confers upon the public at large.

113.    Section 412 provides a cause of action to any person whose rights under Section 411 have been infringed.

114.    Because of his advocacy of a seniority based hiring system for movie and television production, his views regarding misconduct on the part of current and former officers of Local 249, as well as his advocacy on behalf of older drivers and himself, McLaughlin was ostracized and subject to discriminatory conduct by Defendants and the leadership of Local 249.

115.    McLaughlin advocated for a seniority based hiring system and complained about his mistreatment and the mistreatment of other similarly situated Members to the leadership of Local 249.

116.    McLaughlin's criticism of the "producer's choice" system and advocacy on behalf of a seniority based system is in line with the position of the Independent Review Board.

117.    McLaughlin had engaged in actions protected by Section 411 when he opposed successive Local 249 presidents–including Ceoffe and Rossi–during prior internal elections for Local 249 members.

118.    McLaughlin has opposed the leadership slate of Local 249 by running for office within the Union himself.

119.    The grievances McLaughlin filed in 2011 complaining of the failure to reimburse 24 members of Local 249 constitute protected activity.

120.    McLaughlin further engaged in protected action when he filed complaints with the NLRB and the EEOC.

121.    Finally, McLaughlin engaged in protected actions when he complained of the lewd and inappropriate behavior of Roland.

122.    Defendants were aware of McLaughlin's protected activity.

123.    Following the protected activity, McLaughlin suffered adverse employment actions, namely, Defendants' repeated failures to hire him as a Teamster Movie Driver.

124.    Because of his protected actions Defendants have failed to hire McLaughlin.

125.    Defendants' repeated failures to hire McLaughlin constitute blackballing him from the industry.

125.    Defendants' actions constitute an ongoing violation of McLaughlin's employment rights.

126.    As a result of the retaliatory actions taken against him, McLaughlin has suffered and

16

continues to suffer damages including, but not limited to, the loss of employment, the loss of wages, the loss of health benefits, loss of retirement benefits, and has incurred attorney's fees and costs.

127.     McLaughlin seeks all remedies and damages against all Defendants permitted by law under 29 U.S.C. § 411, et seq., including but not limited to, compensatory damages, attorney's fees and costs, and pre-judgment and post-judgment interest.

128.     McLaughlin seeks injunctive relief directing Defendant Local 249 and its officers to assure that McLaughlin is treated fairly in the assignment of work and provided driving jobs in the area motion picture industry.

**COUNT II:  VIOLATION OF THE RACKETEER
INFLUENCED CORRUPT ORGANIZATIONS ACT
18 U.S.C. § 1961 et seq.
Plaintiff Timothy McLaughlin v. Defendants Mike Ceoffe,
Don Kraus, Joseph Rossi, Byron Roland, Marc Scott, Katie Scott, and Joseph Conforti**

129.     The preceding paragraphs are incorporated as if set forth at length herein.

130.     This Count is against Ceoffe, Kraus, Rossi, Roland, Scott, Ms. Scott, and Conforti (hereinafter collectively the "RICO Defendants").

131.     Local 249 is an enterprise within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c) engaged in, or engaged in the activities which affect, interstate commerce within the meaning of 18 U.S.C. § 1962(c); the RICO Defendants are all associated with this enterprise.

132.     The RICO Defendants agreed to and did conduct and participate in the conduct of the enterprise's affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally defrauding Plaintiff.

133.     Specifically, the RICO Defendants committed fraud by failing to adhere to the established procedure for hiring/referring drivers for positions on local production sets upon which

McLaughlin relied.

134.    Pursuant to and in furtherance of their fraudulent scheme, the RICO Defendants committed multiple related acts of fraud in acting to block McLaughlin from being hired as an on-set driver.

135.    The fraudulent actions referenced above constitute a pattern of racketeering pursuant to 18 U.S.C. § 1961(5).

136.    The RICO Defendants have directly and indirectly conducted and participated in the conduct of the enterprise's affairs through the pattern of racketeering and activity described above, in violation of 18 U.S.C. § 1962(c).

137.    As a direct and proximate result of the RICO Defendants; racketeering activities and violations of 18 U.S.C. § 1962(c), McLaughlin has been injured in his business and property in that he had been blackballed from working in the motion picture/film production industry in western Pennsylvania.

138.     McLaughlin seeks all remedies and damages permitted by law under 18 U.S.C. § 1961 et seq., including but not limited to, compensatory damages, attorney's fees and costs, and pre-judgment and post-judgment interest.

**COUNT III: CONSPIRACY TO VIOLATE THE
RACKETEER INFLUENCED CORRUPT ORGANIZATIONS ACT
18 U.S.C. § 1961 et seq.
Plaintiff Timothy McLaughlin v. Defendants Mike Ceoffe,
Don Kraus, Joseph Rossi, Jr., Byron Roland, Marc Scott, Katie Scott, and Frank Conforti**

139.    The preceding paragraphs are incorporated as if set forth at length herein.

140.    Local 249 is an enterprise within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c) engaged in, or engaged in the activities which affect, interstate commerce within the meaning of 18

U.S.C. 1962(c); the RICO Defendants are all associated with this enterprise.

141.    The RICO Defendants also constitute an "enterprise" as that term is defined in 18 U.S.C.A. § 1961, engaged in the activities of which affect interstate commerce.  Such activities include referring commercial drivers for employment on production/motion picture sets in the Pittsburgh area.

142.    The RICO Defendants engaged in a series of actions in an effort to devise, foster, or create a fraudulent pretext upon which to deny McLaughlin employment as a commercial driver on production/motion picture sets in the Pittsburgh area.

143.    The RICO Defendants fraudulent acts constitute violations of Pennsylvania and/or federal law related to fraudulent misrepresentation.

144.    Under Pennsylvania law, 18 PA. CONS. STAT. § 4107(a)(6), it is illegal to make or induce "...others to rely on a false or misleading written statement for the purpose of obtaining property or credit."

145.    By controlling the hiring process, the RICO Defendants have, in effect, induced members of Local 249 into remaining dues paying member by promising them a largely non-existent possibility that they could be hired for a on-site driving position.

146.    Moreover, the RICO Defendants uses computer or wire-based systems, contrary to federal law, to perpetuate the aforementioned fraud.

147.    The RICO Defendants, in violation of Pennsylvania law, are guilty of fraud because they advertised for a specific hiring process that they failed to apply to  McLaughlin's situation; they did this to retaliate against him regarding his complaints regarding age-related discrimination against other members of Local 249.

19

148.    The actions of the RICO Defendants cause considerable financial loss to McLaughlin.

149.    The RICO Defendants for the purposes of effectuating this scheme, have concealed the ongoing fraud perpetrated on McLaughlin by failing to be transparent about the relevant hiring process.

150.    The RICO Defendants aided and abetted the violations of federal and state law.

151.    The violations of Pennsylvania law pertaining to fraud which occurred on more than one occasion in the last ten years constitutes a pattern of racketeering activity in violation of 18 U.S.C. § 1962, for which treble damages, costs of suit and attorney's fees may be sought under 18 U.S.C. § 1964(c).

152.    Ths use of the mails and wire for the purposes of effectuating the scheme to defraud McLaughlin occurred on more than one occasion in the last ten years, constitutes a pattern of racketeering activity in violation of 18 U.S.C. § 1962, for which treble damages, costs of suit and attorney's fees may be sought under 18 U.S.C. § 1964(c).

153.    The RICO Defendants, along with any other cooperating affiliates of Local 249, aided, abetted, counseled, induced or procured the commission of the violations of the Federal Mail Fraud, Wire Fraud and RICO Statutes, and therefore are each liable as principals pursuant to 18 U.S.C. § 2.

**COUNT IV: DISCRIMINATION ON THE BASIS OF AGE**
**(VIOLATION OF THE ADEA)**
**29 U.S.C. § 621 et seq.**
**Plaintiff v. Defendant International Brotherhood of Teamsters, Local 249,**
**TriStar Pictures, CBS Studios**

154.    The preceding paragraphs are incorporated as if set forth at length herein.

155.    McLaughlin is over 40 years of age and, as such, is a member of a class protected by the Age Discrimination in Employment Act.

156.    McLaughlin is qualified to serve as a commercial driver on locally-based motion picture sets.

157.    Despite his qualifications, McLaughlin was not hired to serve as a commercial driver.

158.    Local 249, acting in concert with the employing producers (CBS and TriStar), blackballed and/or otherwise barred McLaughlin from employment as an on-site driver on account of his age.

159.    Significantly younger drivers were hired instead of McLaughlin.

160.    The failure to hire McLaughlin constitutes an adverse employment action.

161.    Applicants who were significantly younger than McLaughlin were treated more favorably than McLaughlin.

162.    McLaughlin was denied employment as an on-site driver because of his age.

163.    McLaughlin seeks all remedies and damages permitted under the ADEA, including, but not limited to, back pay, front pay, liquidated damages, attorney's fees, costs, and interest.

**COUNT V: RETALIATION (VIOLATION OF THE ADEA)**
**29 U.S.C. § 621 et seq.**
**Plaintiff v. Defendant International Brotherhood of Teamsters, Local 249**
**TriStar Pictures, CBS Studios**

164.    The preceding paragraphs are incorporated as if set forth at length herein.

165.    McLaughlin is over 40 years of age and, as such, is a member of a class protected by the ADEA.

166.    McLaughlin engaged in activity protected by the ADEA when he complained of the

21

discriminatory treatment of his fellow drivers when he served as steward as well as his own subsequent administrative charges of age discrimination and retaliation.

167.    McLaughlin engaged in activity protected by the ADEA when he filed two successive administrative complaints with the EEOC.

168.    Moreover, McLaughlin–by complaining about the "producer's choice" system, the failure of Local 249 to implement a seniority-based hiring system–complained against what he, in good faith, considered to be prohibited by the ADEA.

169.    McLaughlin is qualified to serve as a commercial driver on locally-based motion picture sets.

170.    Local 249, acting in concert with the employing producers (CBS and TriStar), blackballed and/or otherwise barred McLaughlin from employment as an on-site driver after he made his protected complaints regarding discriminatory treatment.

171.    McLaughlin was blackballed from employment because he had engaged in the aforementioned protected actions.

172.    McLaughlin seeks all remedies and damages permitted under the ADEA, including, but not limited to, back pay, front pay, emotional distress and reputation harm damages, punitive damages, attorney's fees, costs, and interest.

### COUNT VI: BREACH OF DUTY OF FAIR REPRESENTATION
#### Violation of the National Labor Relations Act, 29 U.S.C. § 151
#### Plaintiff Timothy McLaughlin v. Defendant Int'l Bhd of Teamsters, Local 249

173.    The preceding paragraphs are incorporated as if set forth at length herein.

174.    In order to state a claim for breach of duty of fair representation, a plaintiff 1) must prove that a union represented a plaintiff in a discriminatory, dishonest, arbitrary, or perfunctory

fashion and 2) that there was a causal link between the union's breach and the plaintiff's injuries.

175.    A union breaches its duty of fair representation when it acts with discriminatory intent and bad faith.

176.    A union's duty of fair representation extends to the operation of a hiring hall.

177.    By blocking McLaughlin's access to jobs as an on-site driver for locally-based television and motion picture productions, Local 249 acted with discriminatory intent and bad faith towards McLaughlin, thereby breaching its duty of fair representation towards him.

178.    As a result of Local 249's failure to represent him in good faith, McLaughlin was denied work opportunities and needed income.

179.    McLaughlin seeks are damages, including actual and punitive damages, available against Local 249 for breach of the duty of fair representation.

### COUNT VII: DISCRIMINATION ON THE BASIS OF AGE
### Violation of the Pennsylvania Human Relations Act., 43 P.S. § 951 et seq.
### Plaintiff Timothy McLaughlin v. Defendants Int'l Bhd. of Teamsters, Local 249, TriStar Pictures, Inc. and CBS Studios, Inc.

180.    The preceding paragraphs are incorporated as if set forth at length herein.

181.    The substantive elements of an age discrimination claim under the PHRA are the same as those under the ADEA.

182.    McLaughlin is over 40 years of age and, as such, is a member of a class protected by the PHRA.

183.    McLaughlin is qualified to serve as a commercial driver on locally-based motion picture sets.

184.    Despite his qualifications, McLaughlin was not hired to serve as a commercial driver.

23

185.     Local 249, acting in concert with the employing producers (CBS and TriStar), blackballed and/or otherwise barred McLaughlin from employment as an on-site driver on account of his age.

186.     Local 249 aided and abetted the discrimination against McLaughlin by not referring him for a driving position.

187.     Significantly younger drivers were hired instead of McLaughlin.

188.     The failure to hire McLaughlin constitutes an adverse employment action.

189.     Applicants who were significantly younger than McLaughlin were treated more favorably than McLaughlin.

190.     McLaughlin was denied employment as an on-site driver because of his age.

191.     McLaughlin seeks all remedies and damages permitted under the PHRA, including, but not limited to, back pay, front pay, liquidated damages, attorney's fees, costs, and interest.

**COUNT VIII: RETALIATION**
**Violation of the Pennsylvania Human Relations Act., 43 P.S. § 951 et seq.**
**Plaintiff Timothy McLaughlin v. Defendants TriStar Pictures, Inc. and CBS Studios, Inc.**

192.     The preceding paragraphs are incorporated as if set forth at length herein.

193.     The substantive elements of a retaliation claim under the PHRA are the same as those under the ADEA.

194.     McLaughlin is over 40 years of age and, as such, is a member of a class protected by the PHRA.

195.     McLaughlin engaged in activity protected by the PHRA when he complained of the discriminatory treatment of his fellow drivers when he served as steward as well as his own subsequent administrative charges of age discrimination and retaliation.

196.    McLaughlin engaged in activity protected by the ADEA when he filed two successive administrative complaints with the EEOC.

197.    Moreover, McLaughlin–by complaining about the "producer's choice" system, the failure of Local 249 to implement a seniority-based hiring system–complained against what he, in good faith, considered to be prohibited by the ADEA.

198.    McLaughlin is qualified to serve as a commercial driver on locally-based motion picture sets.

199.    Local 249, acting in concert with the employing producers (CBS and TriStar), blackballed and/or otherwise barred McLaughlin from employment as an on-site driver after he made his protected complaints regarding discriminatory treatment.

200.    Local 249 aided and abetted the discrimination against McLaughlin by not referring him for a driving position.

201.    McLaughlin was blackballed from employment because he had made the aforementioned protected complaints.

202.    Because of the actions of Local 249, the Defendants to this Count failed to hire McLaughlin.

203.    The individual Defendants to this Count–Scott, Ms. Scott, Roland, Kraus, Ceoffe, Conforti, and Rossi–all aided and abetted the retaliatory acts complained of in this Count.

204.    McLaughlin seeks all remedies and damages permitted under the PHRA, including, but not limited to, back pay, front pay, emotional distress and reputation harm damages, punitive damages, attorney's fees, costs, and interest.

## COUNT IX: INTERFERENCE WITH PROSPECTIVE EMPLOYMENT
### Violation of Pennsylvania Common Law
### Plaintiff Timothy McLaughlin v. Union, M. Scott, K. Scott, Roland, Kraus, Ceoffe, Conforti, and Rossi

205.   The preceding paragraphs are incorporated as if set forth at length herein.

206.   In order to state a claim under Pennsylvania law for interference with prospective employment, a plaintiff must first prove a) the existence of a prospective contractual relationship with a third party, b) purposeful action on the part of the defendant to prevent the relationship from occurring, c) the absence of justification of privilege on the part of the defendant, and d) the occasioning of actual legal damage on the part of the defendant's conduct.

207.   Multiple prospective employment relationships existed between McLaughlin and the various film producers who operated throughout western Pennsylvania.

208.   Due to his prior experience and seniority, McLaughlin should have been hired as an on-site driver for television/motion picture productions in the Pittsburgh area.

209.   By not referring him to the producers and/or not hiring him as a Teamster Movie Driver even when he was specifically requested, the Defendants engaged in purposeful action to prevent McLaughlin from being hired as a driver for most Pittsburgh-based television/motion picture productions over the past decade.

210.   The Defendants' actions in blocking McLaughlin's employment were not justified.

211.    McLaughlin suffered damages in the form of lost income as a result of not being able to be hired as a driver for area television/motion picture productions.

212.    McLaughlin seeks any and all damages, including both actual and punitive damages, available under Pennsylvania law for interference with a prospective employment relationship.

26

Respectfully submitted,


s/James B. Lieber
James B. Lieber
Pa. I.D. No. 21748
Thomas M. Huber
Pa. I.D. No. 83053
Jacob M. Simon
Pa. I.D. No. 202610
LIEBER HAMMER HUBER & PAUL, P.C.
1722 Murray Avenue, 2nd Floor
Pittsburgh, PA 15217
(412) 687-2231 (telephone)
(412) 687-3140 (fax)
Attorneys for Timothy McLaughlin