IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TIMOTHY MCLAUGHLIN,<br><br>*Plaintiff,*<br><br>v.<br><br>THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS, LOCAL 249, *et al*,<br><br>*Defendants.* | Civil Action No. 2:21-cv-832<br><br>Hon. William S. Stickman IV |

### MEMORANDUM OPINION

WILLIAM S. STICKMAN IV, United States District Judge

Pending before the Court is Defendant Byron Roland's ("Roland") Motion for Judgment on the Pleadings. (ECF No. 87). Plaintiff Timothy McLaughlin ("McLaughlin") brought this action against ten defendants claiming that "he has been blacklisted for over a decade from work as a driver on movie and television productions in Pittsburgh, Pennsylvania."[1] (ECF No. 77, p. 1) (*see also* ECF No. 41). Count IX of McLaughlin's amended complaint, brought under the Pennsylvania Human Relations Act ("PHRA") for retaliation, is presently at issue.[2] (ECF No. 41,

---

[1] The specific facts underlying McLaughlin's amended complaint are set forth in the Court's prior Memorandum Opinion at ECF No. 77 on pages two through four.

[2] The Court previously determined that Roland is a proper defendant with respect to this PHRA retaliation claim. (ECF No. 77, p. 47). The PHRA makes it unlawful for any employer "because of the . . . age . . . of any individual or independent contractor, to refuse to hire or employ or contract with, . . . or to otherwise discriminate against such individual or independent contractor with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract, if the individual or independent contractor is the best able and most competent to perform the services required." 43 P.S. § 955(a). Further, the PHRA makes it unlawful for any person, employer, or labor organization "to discriminate in any manner against any individual because such individual has opposed any practice forbidden by [the PHRA], or because such individual has made a charge, testified or assisted, in any manner, in any investigation, proceeding or hearing under [the PHRA]." 43 P.S. § 955(d).

1

pp. 47-48). It alleges that McLaughlin "engaged in protected activity when he filed (a) administrative charges of age discrimination, (b) filed and litigated 3 federal lawsuits alleging violations of the ADEA[3], and (c) complained internally to the Union about age discrimination." (*Id.* at 47). Count IX further alleges that "Roland retaliated against McLaughlin by failing to hire him" and that "Roland [was] aware of McLaughlin's prior protected conduct including that McLaughlin previously had accused Roland and other Captains and Coordinators of age discrimination by getting rid of the older drivers like himself and instead hiring younger and inexperienced drivers." (*Id.*). McLaughlin additionally alleges in Count IX that "[a] causal connection exists between the protected activity and the adverse action including based on temporal proximity, ongoing antagonism, and pretext." (*Id.* at 48).

Roland argues that McLaughlin's PHRA retaliation claim set forth in Count IX must be dismissed because "(1) McLaughlin's allegations failed to establish the third element of his *prima facie* case requiring him to demonstrate the requisite causal connection between his alleged complaint and the alleged adverse action;[4] (2) McLaughlin's failure to demonstrate that Roland's failure to hire him would not have occurred "but for" his EEOC[5]/PHRA charge; and (3) the PHRA's statute of limitations bars any and all claims 180 days prior to McLaughlin filing his

---

[3] The Age Discrimination in Employment Act ("ADEA").

[4] The Court dismissed McLaughlin's claim that Defendant CBS Studios, Inc. ("CBS") retaliated against him based upon his failure to demonstrate a causal connection between his protected activity (i.e., his 2012 EEOC charge, 2015 lawsuit accusing Roland of age discrimination, and 2015 complaint to the International Brotherhood of Teamsters, Local 249 ("Union") accusing Roland of age discrimination and retaliation) and CBS's failure to hire him as movie driver for CBS's production of the television series *One Dollar*. He asserted that CBS—through its "hiring agent/employee" Roland—retaliated against McLaughlin in violation of the ADEA. (ECF No. 77, pp. 33-38).

[5] Equal Employment Opportunity Commission ("EEOC").

PHRA charge."[6] (ECF No. 88, p. 2). For the following reasons, the Court will deny Roland's motion.

## I. STANDARD OF REVIEW

Roland has brought a Motion for Judgment on the Pleadings under Federal Rule of Civil Procedure 12(c) ("Rule 12(c)"), which provides that once the pleadings are closed, but within such time as to not delay trial, a party may move for judgment on the pleadings. A party may use a motion for judgment on the pleadings under Rule 12(c) as a vehicle for raising several of the defenses enumerated in Federal Rule of Civil Procedure Rule 12(b) ("Rule 12b"). *Turbe v. Gov't of Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991). The standard of review is identical to that of a motion to dismiss under Rule12(b)(6).[7] *Turbe*; *see also Lum v. Bank of Am.*, 361 F.3d 217, 223

---

[6] In its September 6, 2022 Memorandum Opinion, the Court denied Roland's motion to dismiss Count IX. The Court first rejected the argument that McLaughlin failed to exhaust his administrative remedies because Roland was not a named party in the charge he filed with the Pennsylvania Human Relations Commission ("PHRC"). (ECF No. 77, p. 45). Second, the Court rejected Roland's argument that he did not qualify as an "employer" under the PHRA. (*Id.*). Notably, the Court stated that it would not "address whether McLaughlin has stated a prima facie claim of retaliation against Roland because he has not raised that as a ground for dismissal." (*Id.* at 45, n. 19). Regarding the Union's argument that Count IX was time-barred based on McLaughlin's failure to file his administrative charge within the statutory periods, the Court held: "As to the PHRA claims, the charge was timely filed with respect to acts of discrimination or retaliation that occurred on or after December 28, 2019—i.e., 180 days prior to the filing. See 43 P.S. § 959(h)." (*Id.* at 44). Nothing before the Court would alter its ruling or analysis that McLaughlin has satisfied the exhaustion requirements as to Count IX against Roland.

[7] A plaintiff must allege sufficient facts that, if accepted as true, state a claim for relief plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The "plausibility" standard required for a complaint to survive a motion to dismiss is not akin to a "probability" requirement but asks for more than sheer "possibility." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). In other words, the complaint's factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations are true even if doubtful in fact. *Twombly*, 550 U.S. at 555. Facial plausibility is present when a plaintiff pleads factual content that allows the court to draw the reasonable inference that a defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. Even if the complaint's well-pleaded facts lead to a plausible inference, that inference alone will not entitle a plaintiff to relief. *Id.* at 682. The complaint must support the inference with facts to plausibly justify that inferential leap. *Id.*

3

(3d Cir. 2004). The only difference is that, on a motion for judgment on the pleadings, a court reviews not only the complaint, but also the answer and written instruments attached to the pleadings. *Iseley v. Talaber*, No. 5-cv-444, 2008 WL 906508, at *2 (M.D. Pa. Mar. 31, 2008) (citation omitted). A court should consider the allegations in the pleadings, the exhibits attached thereto, matters of public record, and "undisputedly authentic" documents if a plaintiff's claims are based on such documents. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 889 F.2d 1192, 1196-97 (3d Cir. 1993); *see also Mele v. Fed. Reserve Bank of N.Y.*, 359 F.3d 251, 256 n.5 (3d Cir. 2004) (providing that a court may consider (1) exhibits attached to the complaint, (2) matters of public record, and (3) all documents that are integral to or explicitly relied upon in the complaint, even if they are not attached thereto, without converting the motion into one for summary judgment). However, because a Rule 12(c) "motion calls for an assessment of the merits of the case at an embryonic stage, the court must view the facts contained in the pleadings in the light most favorable to the nonmovant and draw all reasonable inferences therefrom" in the nonmovant's favor. *R.G. Fin. Corp. v. Vergara-Nunez*, 446 F.3d 178, 182 (1st Cir. 2006).

When a Rule 12(c) motion is not used to raise Rule 12(b) defenses, judgment on the pleadings under Rule 12(c) is not appropriate "'unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law.'" *CoreStates Bank, N.A. v. Huls Am., Inc.*, 176 F.3d 187, 193 (3d Cir. 1999) (quoting *Kruzits v. Okuma Machine Tool, Inc.*, 40 F.3d 52, 54 (3d Cir. 1994)). Motions under Rule 12(c) that are not used to raise certain Rule 12(b) defenses require a determination on the merits of the case and "should be granted only where it is clear that the merits of the controversy can be fairly and fully decided in such a summary manner." *In re Dreyfus Mut. Funds Fee Litig.*, 428 F. Supp. 2d 357, 358 (W.D. Pa. 2006).

## II.    ANALYSIS

**A. McLaughlin has pled a *prima facie* case of retaliation**

Retaliation claims under the PHRA are analyzed under the *McDonnell Douglas*[8] burden-shifting framework. The first step of this framework requires a plaintiff to present a *prima facie* case. In order to establish a *prima facie* case, McLaughlin must show that (1) he was engaged in protected activity; (2) he suffered an adverse employment action; and (3) a causal nexis exists between the protected activity and the adverse employment action. *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 193 (3d Cir. 2015) (citation omitted). Roland contends that the third element of the *prima facie* test–causation–has not been met.

A plaintiff may show causation in any of the following three manners: (1) by the timing of the adverse action in relation to the protected activity; (2) by a pattern of animus during the interval between the protected activity and the adverse action; or (3) through other circumstantial evidence concerning the employer's motivation, including inconsistent reasons given by the employer or the employer's treatment of other employees. *Theriault v. Dollar Gen.*, 336 F. App'x 172, 175 (3d Cir. 2009). Thus, in proving a causal link between protected activity and adverse action, McLaughlin may rely on "a broad array of evidence." *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 284 (3d Cir. 2000).

"[I]t is causation, not temporal proximity itself, that is an element of [a] plaintiff's *prima facie* case, and temporal proximity merely provides an evidentiary basis from which an inference can be drawn. The element of causation, which necessarily involves an inquiry into the motives of an employer, is highly context-specific." *Kachmar v. Sungard Data Sys., Inc.*, 109 F.3d 173, 178 (3d Cir. 1997). Determining whether temporal proximity alone may create an inference of

---

[8] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)

retaliation is "essentially fact-based ... depending ... on how proximate the events actually were, and the context in which the issue came before us." *Farrell*, 206 F.3d at 279.

McLaughlin argues that "there are sufficient allegations to raise a reasonable inference of causation between [his] protected activity and the adverse action to withstand the motion for judgment on the pleadings." (ECF No. 100, p. 13). The Court agrees. McLaughlin has adequately demonstrated the requisite causal connection.

McLaughlin asserts that he engaged in protected activity on a number of occasions, beginning in 2012 when he "filed an age discrimination charge for the failure to hire against the production company that employed Roland." (ECF No. 100, p. 10; ECF No. 41, ¶ 62). Next, on May 1, 2015, "[he] complained in writing to the Union about the 'Banshee' failure-to-hire and that Roland had retaliated against him including for his prior complaints of age discrimination." (ECF No. 100, p. 10; ECF No. 41, ¶¶ 78-79). McLaughlin also contends that in 2015, "[he] filed a *pro se* lawsuit under the ADEA against the production company which had Roland as its hiring agent. The lawsuit … settled or resolved in 2016." (ECF No. 100, p. 10; ECF No. 41, ¶ 66). Then, on January 4, 2019, "[he] filed *pro se* a charge with the EEOC against CBS Studios, Inc. and Roland alleging they failed to hire him for the 'One Dollar' television series in retaliation for filing earlier EEOC charges." (ECF No. 100, p. 10; ECF No. 41, ¶ 119). Further, in 2019, McLaughlin allegedly "complained to the Union that Roland continued to retaliate against him including based on his prior filed [age discrimination/retaliation] charges." (ECF No. 100, p. 10; ECF No. 41, ¶¶ 122-23) (brackets in original). Finally in June 2020, "McLaughlin dual-filed a charge of age discrimination and retaliation with the EEOC and PHRC. Roland was named repeatedly in the body of the charge, which [the Court found] was sufficient to exhaust administrative remedies." (ECF No. 100, p. 11; ECF No. 41, ¶ 142; ECF No. 77, p. 46).

McLaughlin first contends that Roland's failure to hire him for "American Rust" constitutes a materially adverse action. (ECF No. 100, p. 11). McLaughlin bases his argument, in part, on the temporal proximity between his June 2020 filing of the EEOC and PHRC charges and the onset of "American Rust's" filming, which began in mid-March 2021 (after its initial filming date in early 2020 was postponed due to COVID-19). (ECF No. 100, p. 11; ECF No. 41, ¶¶ 138, 147, 267). McLaughlin premises his position on the presence of "ongoing antagonism during the interim period" between the June 2020 EEOC/PHRA charge and the onset of "American Rust's" filming.[9] (ECF No. 100, p. 15; ECF No. 41, ¶¶ 142, 145, 147). Second, McLaughlin argues that "there is temporal proximity between his 2019 retaliation complaint against Roland" and his failure to be hired during the initial hiring process for "American Rust" in early 2020 "with ongoing antagonism during the interim period."[10] (ECF No. 100, p. 14; ECF No. 41, ¶¶ 122-23, 135, 138).

In support of his argument that the requisite causal connection element is established, McLaughlin cites to *McKenith v. Borough of Wilkinsburg*, No. CV 20-1361, 2021 WL 3913973 (W.D. Pa. Sept. 1, 2021). In *McKenith*, a 57-year-old African American male who worked as a police officer for Defendant Borough of Wilkinsburg since 1997 asserted claims against the Borough of Wilkinsburg for race discrimination in violation of Title VII (Count One), age discrimination in violation of the ADEA (Count Two), retaliation in violation of Title VII and the

---

[9] McLaughlin alleges that "[d]uring the 8-month period between the PHRC charge and the 'American Rust' failure to hire, Roland also failed to hire McLaughlin for 'The Chair' which filmed in February 2021 which constitutes evidence of ongoing antagonism." (ECF No. 100, p. 15).

[10] McLaughlin alleges that "beginning in October 2019, the movie 'I'm Your Woman' was filmed in and around Pittsburgh. Roland was the Coordinator. He did not hire McLaughlin who was qualified and had applied … Plaintiff submits that the period of months between the complaint and the adverse action [failure to hire for "American Rust" in early 2020] combined with another failure to hire during the intervening period [failure to hire for "I'm Your Woman" beginning in October 2019] is sufficient for causal connection." (ECF No. 100, p. 14).

ADEA (Count Three), and violation of the Pennsylvania Human Relations Act, 43 Pa. Cons. Stat. § 951 *et seq.* (Count Four)." *Id.* at *2. As to the retaliation claim, the Borough of Wilkinsburg filed a motion to dismiss arguing that Plaintiff's complaint "insufficiently allege[d] the causal connection element." *Id.* at *4. Specifically, it "point[ed] to the lack of suggestive temporal proximity between Plaintiff's EEOC charges filed in 2006 and 2016 and any retaliation, which allegedly consist[ed] of being demoted in 2016, refused a civil service exam in May 2018, passed over for the acting chief position in May to August 2019, and removed from the acting lieutenant position in January 2020." *Id.* In denying the Borough of Wilkinsburg's motion to dismiss the retaliation claim, the district court held, "the Complaint alleges enough facts to 'raise a reasonable expectation that discovery will reveal evidence of' the elements of a retaliation claim." *Id.* (quoting *Fowler v. UPMC Shadyside,* 578 F.3d 203, 213 (3d Cir. 2009)). Specifically, it accepted McKenith's "well-pleaded allegations as true as required at [the motion to dismiss] stage." *Id.* The allegations included "a pattern of antagonism from the Defendant, including repeated instances of being demoted or passed over for younger, Caucasian co-workers with no viable explanation from the Defendant for over ten (10) years." *Id.*

Relying on *McKenith*, McLaughlin contends that he "can properly rely on his allegations of his prior age discrimination and retaliation complaints against Roland as well as Roland's pretextual explanations why he failed to hire McLaughlin for other productions to show a history of antagonism."[11] (ECF No. 100, pp. 17, 18) In response, Roland cites to *Daniels v. Sch. Dist. Of*

---

[11] McLaughlin alleges that Roland gave a number of pretextual explanations for his failure to hire McLaughlin over the years resulting in McLaughlin being passed over for jobs "on over 50 productions." (ECF No. 100, p. 3; ECF No. 41, ¶ 155). "In 2011, Roland failed to hire McLaughlin for a production even though McLaughlin specifically had been requested by the production's key grip. Roland claimed pretextually that McLaughlin was not hired because he lacked 'mechanical skills,' which is false." (ECF No. 100, pp. 4-5; (ECF No. 41, ¶¶ 60-61). "[Another] example includes the 2015 'Banshee' production in which the out-of-town Coordinator requested Roland

8

*Phila.,* 776 F.3d 181, 193 (3d Cir. 2016) for the proposition that "… a gap of three months between the protected activity and the adverse action, *without more*, cannot create an inference of causation." (ECF No. 88, p. 8) (italics added). Roland argues that McLaughlin has failed to establish a causal connection between the hiring for "American Rust" and the various "allegations that occurred several years before the hiring on 'American Rust' (previous litigation, failure to hire during 2015 on 'Banshee,' etc.)" because they are "far too remote in time." (*Id.* at 10).

Roland's argument misses the mark. McLaughlin "is alleging temporal proximity (with intervening failures to hire) between his 2019 complaint to the Union and the early 2020 failure to hire, as well as the June 2020 PHRC charge and the 2021 failure to hire." McLaughlin additionally relies on Roland's past mistreatment to "indicate his retaliatory attitude when the subsequent employment decision[s] [were] made." (ECF No. 100, p. 16, 20). As such, the Court finds that McLaughlin has set forth a suggestive timeframe that could establish a causal link.

Lastly, all of the facts set forth in his amended complaint reveal evidence implying causation. McLaughlin is older than forty (being born in 1952), has extensive experience as a movie driver, and was passed over on numerous occasions for movie driver positions under circumstances that, at a minimum, give the appearance of longstanding animosity.[12] McLaughlin

---

(who was appointed Union Captain) to hire McLaughlin but Roland refused. Roland's claim that McLaughlin is not qualified for the position due to an alleged lack of mechanical skills … is false and pretextual." (ECF No. 100, p. 2; ECF No. 41, ¶¶ 271, 273). "In March of 2018, Roland failed to hire McLaughlin for the CBS television series 'One Dollar…' Roland hired former Union President Mike Ceoffe to drive a 10 ton truck which McLaughlin had driven many times (including a trip to Atlanta *with* Roland) even though Ceoffe never before had driven this particular truck (nor any movie truck). Roland previously told federal investigators that McLaughlin was not qualified to drive the 10 ton truck because it is a 'specialized' truck." (ECF No. 100, pp. 5-6; ECF No. 41, ¶¶ 105-06).

[12] As to McLaughlin's experience, he is a professional truck driver with a Class A commercial driver's license, "specializ[ing] in work as a driver on movie and television productions." (ECF No. 41, pp. 1, 6). He has been a member of Local 249 of the International Brotherhood of Teamsters for over fifty years. (ECF No. 41, ¶¶ 1, 23). According to McLaughlin's amended

alleges that "less qualified and/or significantly younger individuals" were hired in his stead.[13] (ECF No. 100, pp. 14, 15). And, as previously recounted, McLaughlin has set forth enough facts that could connect his protected activity (i.e., filing administrative charges of age discrimination, litigating three federal lawsuits alleging violations of the ADEA, and complaining internally to the Union about age discrimination) to Roland not hiring him.

The Court will deny Roland's motion as McLaughlin has adequately set forth a *prima facie* claim of retaliation against Roland.

### B. Discovery will reveal the ultimate merit of Count IX against Roland

After establishing a *prima facie* case of retaliation, the burden shifts to the employer to provide a legitimate non-retaliatory reason for its conduct. *Moore v. City of Philadelphia*, 461 F.3d 331, 342 (3d Cir. 2006); *see also McDonnell Douglas Corp.*, 411 U.S. at 802. If it does so, the burden shifts back to the plaintiff "to convince the factfinder both that the employer's proffered explanation was false [that is, a pretext], and that retaliation was the real reason for the adverse employment action." *Moore*, 461 F.3d at 342.[14] Thus, the burden is on McLaughlin to establish

---

complaint, he "has driven almost every piece of movie equipment, and was elected Union Steward on nearly every movie he worked." (*Id.* at 6). Some of the projects he worked on as a teamster movie driver include "Adventureland," "Love and Other Drugs," and "Warrior." (*Id.*).

[13] McLaughlin's allegation that "less qualified and/or significantly younger individuals" were hired in his stead will suffice for purposes of establishing his *prima facie* case. However, it goes without saying that in order for McLaughlin to ultimately prevail, he must show that younger individuals were hired in his stead. Roland correctly notes that "favoritism is not legally actionable under the PHRA" and "snubbing ... does not amount to unlawful retaliation." (ECF No. 88, p. 9) (citing *Kryeski v. Schott Glass Techs.*, 626 A.2d 595, 598 (Pa. Super. 1993)) (quoting *Miller v. Aluminum Co. of America*, 679 F. Supp. 495, 505 (W.D. Pa. 1988)).

[14] "To discredit the employer's proffered reason, ... the plaintiff cannot simply show that the employer's decision was wrong or mistaken[.]" *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994). "Rather, the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for

causation at two stages of the case: initially, to demonstrate a causal connection as part of the *prima facie* case, and at the final stage of the *McDonnell Douglas* framework to satisfy his ultimate burden of persuasion by proving pretext.

Roland argues that McLaughlin has failed to "demonstrate that Roland's failure to hire him would not have occurred 'but for' his EEOC/PHRA charge." (ECF No. 88, p. 2). McLaughlin responds that he need not prove this element at this stage of the case. (ECF No. 100, p. 18). The Court concurs; it cannot determine without discovery whether McLaughlin engaged in protected conduct or instead whether Roland acted permissibly.

The Court must accept all of McLaughlin's well-pleaded facts as true. He has set forth sufficient facts to support his allegation that the decision not to hire him was pretextual. The Court cannot weigh the veracity of any alternative facts at this time as it must accept the allegations in McLaughlin's amended complaint as true. McLaughlin will need to provide facts to substantiate his allegation if he hopes to prevail. The question before the Court is not the ultimate question of whether Roland actually retaliated against McLaughlin. It is whether McLaughlin has satisfied the lenient standard of review at the motion for judgment on the pleadings stage. Since he has, the Court will await a more fully developed record, and possible summary judgment motions, to determine if a genuine issue of material fact exists as to whether McLaughlin's protected activity was a motivating or determinative cause of Roland failing to hire him.

---

its action" that a reasonable jury could infer that the employer did not act because of the legitimate, non-discriminatory reason. *Id.*

### III.   CONCLUSION

For the reasons set forth above, Roland's Motion for Judgment on the Pleadings (ECF No. 87) will be denied.  An Order of Court will follow.

BY THE COURT:

_____
WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

Dated:   1/30/2023