IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TIMOTHY MCLAUGHLIN,<br><br>*Plaintiff*,<br><br>v.<br><br>THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS, LOCAL 249, *et al*,<br><br>*Defendants*. | Civil Action No. 2:21-cv-832<br><br>Hon. William S. Stickman IV |

## MEMORANDUM OPINION

WILLIAM S. STICKMAN IV, United States District Judge

Plaintiff Timothy McLaughlin ("McLaughlin"), a unionized professional truck driver, brought this action against multiple defendants claiming that he has been blacklisted for over a decade from work as a driver on movie and television productions in Pittsburgh, Pennsylvania. (ECF No. 41). Pending before the Court is Defendant TriStar Pictures, Inc.'s ("TriStar") Motion for Summary Judgment. (ECF No. 134). TriStar seeks the entry of judgment in its favor as to Count VI of McLaughlin's amended complaint, which is a claim of age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq*. For the following reasons, the Court will grant TriStar's motion.

### I.   STANDARD OF REVIEW

Summary judgment is warranted if the Court is satisfied that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material if it must be decided to resolve the substantive claim or defense to which the motion is directed. *See*

1

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). There is a genuine dispute of material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The Court must view the evidence presented in the light most favorable to the nonmoving party. *Id.* at 255. It refrains from making credibility determinations or weighing the evidence. *Id.* "[R]eal questions about credibility, gaps in the evidence, and doubts as to the sufficiency of the movant's proof[]" will defeat a motion for summary judgment. *El v. Se. Pa. Transp. Auth.*, 479 F.3d 232, 238 (3d Cir. 2007).

## II. FACTUAL BACKGROUND

TriStar is the movie production company that filmed *A Beautiful Day in the Neighborhood* ("*A Beautiful Day*") in Pittsburgh, Pennsylvania in 2018 and 2019. The original shoot for *A Beautiful Day* took place between July and October of 2018, and the reshoot of certain scenes took place on three days in April and May of 2019. Out of town producers are unfamiliar with the local labor force for movie drivers. TriStar hired 73-year-old Donald Kraus ("Kraus") to serve as the transportation coordinator and 52-year-old Frank Conforti ("Conforti") to serve as the transportation captain managing the day-to-day activities.[1] Kraus made the driver hiring decisions for *A Beautiful Day*, but he consulted with Conforti.[2] The contract between TriStar and the Union stated that the Union was not an exclusive hiring hall, meaning that TriStar did not have to hire Union members as drivers. Kraus had a list of preferred drivers that he liked to hire, and he hired almost all of those individuals. Kraus typically does not know the

---

[1] Kraus had been a member of the International Brotherhood of Teamsters, Local 249 ("Local 249" or "Union") for 54 years, but he suspended his membership to serve as the transportation coordinator. Conforti could remain an active Union member in his role as transportation captain on *A Beautiful Day*. (ECF No. 133, p. 3; ECF No. 144, pp. 5-6; ECF No. 145, pp. 4, 6; ECF No. 157, pp. 4, 14).

[2] Kraus and Conforti are the only TriStar employees that allegedly discriminated against McLaughlin. (ECF No. 133, p. 3; ECF No. 144, p. 8).

ages of the drivers he hires, and the Union applications do not contain ages of applicants. 35 drivers were hired for the original shoot and 20 drivers were hired for the reshoot. Kraus hired and worked with every driver on *A Beautiful Day* except for Kevin Mincher ("Mincher"), who was hired for the "day pay" non-commercial driver's license work of driving a van on the original shoot. Kraus knew Mincher for over twenty years. For the original shoot, 29 of the 35 drivers hired were over the age of 40, 24 of the 35 drivers hired were over the age of 50, and 13 of the 35 drivers hired were over the age of 60. Thus, the average age of the drivers on the original shoot was 53.35 years old. For the reshoot, Kraus sought to utilize the same drivers as the original shoot, but some were unavailable. 16 of the 20 drivers hired were over the age of 40, 15 of the 20 drivers hired were over the age of 50, and 7 of the 20 drivers hired were over the age of 60. Thus, the average age of the drivers on the reshoot was 51.97 years old. (ECF No. 133, pp. 1-6, 15; ECF No. 144, pp. 1-12, 20-22, 57; ECF No. 145, pp. 3, 12; ECF No. 157, pp. 9, 32).

McLaughlin was born in 1952. He is a professional truck driver with a Class A commercial driver's license ("CDL") and has been a member of Local 249 for over 50 years. Between 2001 and 2011, McLaughlin worked consistently as a driver on movie and television productions in Pittsburgh. He has driven almost every piece of movie equipment, including the Grip Trailer, Camera Truck, Water Truck, Star Trailers, and PreRig Electric Trailers. (ECF No. 145, pp. 1-2; ECF No. 157, pp. 4-6). In 2012, McLaughlin suffered an injury, and from 2012 to 2018, he did not work. Despite submitting annual applications and maintaining his CDL, McLaughlin has not worked as a movie driver since 2011. However, since 2018, McLaughlin has worked for First Student, Inc. as a school bus driver, and he is represented by Local 249. (ECF No. 145, p. 3; ECF No. 157, pp. 6-8).

Drivers can apply directly to movie production companies for positions on specific movies. (ECF No. 133, p. 10; ECF No. 144, p. 27-31). Production companies are free to hire Union or non-Union members to drive on their productions.[3] (ECF No. 133, p. 12; ECF No. 144, pp. 47-48). As part of the driver hiring process, the production's transportation captain can request applications on file from the Union. An individual can apply to be a movie driver by submitting an annual application with the Union, knowing that production companies request them. (ECF No. 145, pp. 4-5; ECF No. 157, pp. 10-11). Conforti collected a stack of applications from the Union in July 2018,[4] and for the 2019 reshoot, Captain Kondos did.[5] Kraus and Conforti went through the applications, and Kraus decided who to hire. McLaughlin was not hired for either the shoot or the reshoot. Kraus did not recall specifically seeing McLaughlin's application amongst all those supplied by the Union. McLaughlin did not apply directly with TriStar or Kraus for a driver position on *A Beautiful Day*.[6] Kraus did not know McLaughlin's age in 2018. (ECF No. 133, pp. 8, 11; ECF No. 144, pp. 21, 33-41; ECF No. 145, pp. 7, 9; ECF No. 157, pp. 11-14, 18, 25-26). Conforti also did not recall seeing McLaughlin's

---

[3] However, if a non-Union individual is hired as a driver by a production company, the individual is supposed to join the Union or risk termination. (ECF No. 133, pp. 12-13; ECF No. 144, pp. 47-48).

[4] He also asked that the Union email him all the applications, and it did so on July 18, 2018. (ECF No. 145, p. 10; ECF No. 157, p. 28).

[5] Apparently, the Union emailed McLaughlin's application on May 18, 2018, to TriStar, but neither Kraus nor Conforti were hired yet. Neither of them could recall receiving the email. (ECF No. 145, p. 9; ECF No. 157, pp. 23-25, 43).

[6] McLaughlin knew he could directly apply with a production company like TriStar, and he had actually done so on prior occasions. (ECF No. 133, pp. 10-11; ECF No. 144, pp. 27-30; ECF No. 157, pp. 10-11).

application. (ECF No. 157, pp. 25-29, 43). After production concluded, Kraus shredded all the driver applications for privacy reasons. (ECF No. 145, p. 10; ECF No. 157, p. 27).

At the time of the original shoot of *A Beautiful Day*, McLaughlin was 66 years old. Kraus knew McLaughlin from working on a few movies in the early 2000s. (ECF No. 145, pp. 6, 12; ECF No. 157, pp. 14-15, 31). Both Kraus and Conforti did not enjoy working with McLaughlin, and claimed that they would not choose to work with him. Neither Kraus nor Conforti ever voluntarily worked with McLaughlin. According to McLaughlin, he worked with Kraus "a lot of times," and it seemed to him that Kraus liked working with him. However, Kraus filed a labor charge against the Union after not being hired for a position in 2006, and he won his lawsuit and was awarded back pay. As it turned out, McLaughlin was appointed as captain on the production, and Kraus never called McLaughlin again. When McLaughlin reached out to Kraus in June 2011 about a position, Kraus said that "he got his own guys." As to Conforti, in 2011, McLaughlin complained to him when McLaughlin was not selected first to work as a driver on *Avengers*. (ECF No. 133, pp. 12, 17-18; ECF No. 144, pp. 43-37, 62-64; ECF No. 145, p. 7; ECF No. 157, pp. 16, 43-44).

On August 16, 2018, after hiring was already complete for *A Beautiful Day*, McLaughlin emailed the Union's movie business agent Keith Frank ("Frank") asking Frank to recommend him for a driving position on *A Beautiful Day*. In early September 2018, after shooting had begun on *A Beautiful Day*, McLaughlin sent a text message to Conforti stating: "I am requesting again to be employed on the movie you are coordinating and captain. (YOU ARE MY FRIEND) I have a cdl class a and my dot physical. Here is my extensive resume." The text message did not identify a sender, and Conforti did not know it was from McLaughlin. (ECF No. 145, p. 11; ECF No. 157, p. 30). McLaughlin claims that he then had Frank send a letter to Kraus asking

5

why he did not hire McLaughlin for *A Beautiful Day*. Kraus was unaware of the letter or of Frank contacting him. (ECF No. 145, p. 19; ECF No. 157, p. 60).

### III. ANALYSIS

The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). McLaughlin alleges that TriStar discriminated against him in violation of the ADEA by failing to hire him for *A Beautiful Day*. As explained below, McLaughlin has failed to establish a prima facie case of age discrimination, and even if he had, he failed to adduce evidence that TriStar's legitimate, non-discriminatory reasons for not hiring him were pretextual. The Court will grant TriStar's motion and enter judgment in its favor.

Age discrimination claims under the ADEA based on circumstantial evidence, like McLaughlin's claim, are subject to the *McDonnell Douglas* framework. *See Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 644 (3d Cir. 2015). *See generally McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973). The plaintiff must first establish a prima facie case of age discrimination, which creates an "inference of unlawful discrimination." *Willis*, 808 F.3d at 644 (citation omitted). The plaintiff must show that he (1) is at least 40 years of age, (2) suffered an adverse employment decision, (3) is qualified for the position, and (4) the position was filled by a sufficiently younger person to create an inference of age discrimination. *Id*. If a plaintiff does so, the burden of production shifts to the employer to prove a legitimate, nondiscriminatory reason for the adverse employment decision. *Id*. If the employer can proffer such a reason, then the burden shifts back to plaintiff to show, by a preponderance of the evidence, that employer's articulated reason was a pretext, and the actual reason was

discrimination. *Id.* at 644–45; *see also Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994) ("[T]he plaintiff must convince the factfinder 'both that the reason was false, and that discrimination was the real reason.'" (citation omitted)). As to the latter showing, the plaintiff need not prove that "age was the sole cause of the challenged decision." *Miller v. Cigna Corp.*, 47 F.3d 586, 595 (3d Cir. 1995). Instead, he must demonstrate "by a preponderance of the evidence that there [was] a 'but-for' causal connection between the plaintiff's age and the employer's adverse action—*i.e.*, that age actually played a role in the employer's decision making process and had a determinative influence on the outcome of that process." *Id.* at 595–96 (cleaned up); *see also Gross v. FBL Fin. Servs.*, 557 U.S. 167, 177–78 (2009). To do so, the plaintiff may point to evidence showing "that the employer has previously discriminated against [him], that the employer has discriminated against other persons within the plaintiff's protected class or within another protected class, or that the employer has treated more favorably similarly situated persons not within the protected class." *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 645 (3d Cir. 1998).

McLaughlin has not established his prima facie case of age discrimination. Taking the evidence in the light most favorable to McLaughlin, he was 66 years old in 2018 when the driver hiring decisions were made for *A Beautiful Day*. McLaughlin suffered an adverse employment action when he was not hired for the shoot or reshoot of *A Beautiful Day*. Admittedly, McLaughlin did not apply directly for a driving position on *A Beautiful Day* with TriStar or Kraus, but there is adequate record evidence to generally show that he applied for a driver position by virtue of his application being on file at the Union, and that application being forwarded to TriStar. McLaughlin has come forth with persuasive evidence that he followed the Union's established procedure for how to apply for movie driver positions and also made

7

reasonable effort to convey his interest via the Union's email to TriStar. Although he has not worked as a movie driver since 2011, McLaughlin has also come forth with evidence that he was qualified for a driver position on *A Beautiful Day* because he had a Class A CDL and at least ten years of experience working as a movie driver, including experience driving almost every piece of movie equipment. Although McLaughlin has seemingly satisfied the first three prongs of the prima facie test, he has not presented evidence that creates an inference between not being selected as a driver for *A Beautiful Day* and that the decision not to hire him was based on his age.

The record is devoid of any alleged discriminatory remarks or facts to suggest that Kraus, who was over the age of 70, possessed any age-based animus. No evidence exists that anyone employed by TriStar made any comments about McLaughlin's age or that any age-based animus existed in any hiring decisions for *A Beautiful Day*.[7] McLaughlin believes that he has satisfied the fourth element of the prima facie case because the average age of the drivers hired for the shoot was 53.35, and he was thirteen years older. Given the group hiring that occurred for *A Beautiful Day*, the Court finds that this is not evidence that creates an inference of discrimination.

McLaughlin has failed to show that the driver positions on *A Beautiful Day* were given to predominantly younger people. 29 of the 35 drivers hired for the original shoot were over 40 years old, 24 of the 35 drivers hired for the original shoot were over 50 years old, and 13 of the

---

[7] The Court notes that the situation in this case is unique in that TriStar had no knowledge of McLaughlin's age at the time drivers were selected for *A Beautiful Day*. As to Kraus, he has no recollection of ever seeing McLaughlin's application, and a driver's age is not listed on the applications submitted to the Union. Kraus submits that he did not know McLaughlin's age in 2018. McLaughlin counters by arguing that Kraus should have known his age because they had been Union members for over 50 years and they worked on productions together during the 2000s. But it is dubious whether such scant circumstantial evidence leads to the inference that McLaughlin's age, particularly that he was over 60, was apparent to Kraus in 2018.

35 drivers hired for the original shoot were over 60 years old. 16 of the 20 drivers hired for the reshoot were over 40 years old, 15 of the 20 drivers hired for the reshoot were over 50 years old, and 7 of the 20 drivers hired for the reshoot were over 60 years old. The average age of the drivers hired for the original shoot was 53.35 years old, and 51.97 years old for the reshoot. Thus, the record demonstrates that TriStar favored drivers in the protected class in its hiring decisions. This negates the inference that younger applicants were given more favorable treatment than those over the age of 40. Further, the fact that TriStar hired 13 drivers over the age of 60 for the shoot and 7 drivers over the age of 60 for the reshoot, negates any inference that age was a factor in TriStar's hiring decisions. The evidence reveals that older applicants, those over the age of 50, were actually given more favorable treatment. *Higgins v. Moshannon Valley School Dist.*, No. 2006-207, 2008 WL 4276636, at *12 (W.D. Pa. Sept. 17, 2008) ("The fact that the District filled one of three positions with a member of the protected class negates the inference that younger applicants were given more favorable treatment than those over the age of forty." (citations omitted)). By focusing only on the employees whose treatment might advance his claim, McLaughlin ignores that an individual cannot "pick and choose a person []he perceives is a valid comparator who was allegedly treated more favorably, and completely ignore a significant group of comparators who were treated equally or less favorably than [him]." *Simpson*, 142 F.3d at 646–47. The Court cannot assess the proffered evidence in a "vacuum." *Id*. at 645. Looking at the spread of drivers hired within and outside of the protected class, it is unreasonable to infer that TriStar's failure to hire McLaughlin was due to his age.

For these reasons, the Court holds that McLaughlin failed to adduce evidence that would support an inference of age-based discrimination. Because he has failed to establish a prima facie case of age discrimination, the Court need not continue its analysis of the *McDonnell*

*Douglas* burden-shifting framework. However, even assuming *arguendo* that McLaughlin had established a prima facie case, the Court would still grant TriStar's summary judgment motion because McLaughlin failed to establish pretext.

TriStar has articulated two legitimate non-discriminatory reasons for McLaughlin not being selected as a driver: 1) Kraus hired drivers that he had previously worked with on other recent productions, including drivers older than 40 (and even older than 60), and 2) Kraus had no knowledge that McLaughlin applied for a driving position on *A Beautiful Day*. (ECF No. 135, p. 12). It was the sole discretion of TriStar to decide which driver candidates to hire, regardless of whether its hiring decisions were logical or smart. *See Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326, 332 (3d Cir. 1995) (Courts "do not sit as a super-personnel department that reexamines an entity's business decisions. No matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers, the ADEA does not interfere." (internal citation and quotation marks omitted)). Thus, to withstand summary judgment, McLaughlin must "convince the factfinder that the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action." *Moore v. City of Philadelphia*, 461 F.3d 331, 342 (3d Cir. 2006) (citation omitted). McLaughlin cannot simply show that TriStar's decision was wrong or mistaken. *Fuentes*, 32 F.3d at 756.

The ultimate test in employment discrimination cases is whether discriminatory animus was a motivating factor in causing the adverse employment action. McLaughlin had to come forth with evidence that would permit a reasonable factfinder to either "(1) disbelieve" TriStar's nondiscriminatory legitimate reasons, or "(2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of [TriStar's] action." *Burton v.*

*Teleflex*, 707 F.3d 417, 427 (3d Cir. 2013) (quoting *Fuentes*, 32 F.3d at 764); *see also Willis*, 808 F.3d at 644 ("To succeed on an ADEA claim, a plaintiff must establish, by a preponderance of the evidence, that age was the 'but-for' cause of the adverse employment action." (citation omitted)). At the pretext stage, "the factual inquiry into the alleged discriminatory motives of the employer [rises] to a new level of specificity." *Willis*, 808 F.3d at 650 (citation omitted). McLaughlin has not offered evidence from which it could be found that his age was a factor in not being hired for *A Beautiful Day*. He has failed to meet his burden of production.

Regarding the first method of demonstrating pretext, the evidence "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." *Fuentes*, 32 F.3d at 765 (internal citations omitted). The question at prong one of the *Fuentes* test "is not whether the employer made the best, or even a sound, business decision;" it is whether the real reason for the employment decision is discrimination. *Keller v. Orix Credit Alliance*, 130 F.3d 1101, 1109 (3d Cir. 1997). Looking at the totality of the evidence proffered, it fails to contradict the core facts put forth by TriStar as to its legitimate reasons for driver hiring decisions on *A Beautiful Day*. To provide a basis for disbelief, McLaughlin had to present "evidence contradicting the core facts put forward by the employer as the legitimate reason for its decision." *Tomasso v. Boeing Co.*, 445 F.3d 702, 706 (3d Cir. 2006) (citation omitted). He has not done so.

Kraus had previously worked with all of the drivers hired for the shoot and reshoot of *A Beautiful Day* except for Mincher, who he hired on the original shoot for day pay in a non-CDL van driving position. It is undisputed that Kraus had a group of predominately older men that he liked to work with, and that McLaughlin was not one of them. The overwhelming majority of

11

drivers hired for *A Beautiful Day* were over the age of 50, and a number of hired drivers were over the age of 60. Kraus had never hired McLaughlin and he had no specific knowledge of McLaughlin's qualifications in 2018. Kraus was only aware that McLaughlin had driven trucks in movie productions in the early 2000s. No evidence refutes the testimony of Kraus (and Conforti) that they had no knowledge that McLaughlin applied for a driver position on *A Beautiful Day* as they had no recollection of seeing his application amongst the hundreds forwarded from Local 249. McLaughlin has admitted that he did not apply directly to TriStar or Kraus, but believes that his application was amongst those provided by the Union. Although he sent a text message to Conforti after drivers were hired for the original shoot, Conforti did not know who the text message was from and never responded. Thus, as to the first method of demonstrating pretext, the Court finds that McLaughlin has failed to adduce evidence establishing a legitimate basis for disbelieving the TriStar's nondiscriminatory explanations for its driver hiring decisions. A reasonable factfinder would have no legitimate basis for disbelieving TriStar's nondiscriminatory reasons.

To prove that invidious intent was a "determinative cause" of an employer's action, "a plaintiff can show, for example, that the defendant had previously subjected the same plaintiff to 'unlawful discriminatory treatment,' that it had 'treated other, similarly situated persons not of [his] protected class more favorably,' or that it had 'discriminated against other members of [his] protected class or other protected categories of persons.'" *Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 277 (3d Cir. 2010) (quoting *Fuentes*, 32 F.3d at 765). McLaughlin has failed to make such a showing.

No ageist documents exist in the record. No ageist statements were made by Kraus (who was over the age of 70), Conforti (who was over the age of 50), or anyone at TriStar. There is no

evidence that McLaughlin was previously discriminated against based on his age by TriStar (or even Kraus). There is no statistical evidence of a pattern or practice of discrimination by TriStar against driver applicants over the age of 40 (or over the age of 60), or that similarly situated younger persons not of the protected class were treated more favorably. Absolutely no evidence exists as to an atmosphere of discrimination at TriStar. Additionally, McLaughlin has not come forth with evidence that TriStar discriminated against other individuals over the age of 40 (or even over the age of 60) applying for driver positions on *A Beautiful Day*. The driver applications submitted to the Union and forwarded to production companies do not contain applicants' ages. There is no evidence that Kraus or Conforti knew the ages of any applicants, although Kraus admittedly had worked with all of the selected drivers in the past. Lastly, the record is devoid of any evidence that the drivers hired for the shoot or reshoot lacked the requisite qualifications and experience. As to those younger drivers hired who did not have a CDL – i.e., Kevin Mincher (age 22), Darien Greb (age 24), Curtis Fuqua (age 38), Dominic Mecchia (age 39), Scott Mincher (age 51), and Charles Fanzo (age 53) – they were hired as van drivers, which was a position for which they were qualified and seemingly not a driver position of interest to McLaughlin. (ECF No. 145, p. 18; ECF No. 157, pp. 50-51).

In sum, the record is devoid of any evidence from which a reasonable jury could conclude that TriStar's explanation for not hiring McLaughlin is unworthy of credence and constitutes a post hoc fabrication developed to conceal age discrimination. McLaughlin has not come forth with evidence from which a factfinder could conclude "an invidious reason was more likely than not a ... determinative cause of the [TriStar's] action." *Fuentes*, 32 F.3d at 764. His uncorroborated testimony about discriminatory treatment cannot—on its own—demonstrate invidious intent at the summary judgment stage. *See Solomon v. Soc'y of Auto. Eng'rs*, 41 F.

App'x 585, 586 (3d Cir. 2002) (holding summary judgment for the employer was warranted because "the only evidence in support of [plaintiff's] claims was Solomon's own testimony"). His speculation and conjecture are insufficient to overcome TriStar's summary judgment motion. McLaughlin has failed to create a triable issue that TriStar's legitimate, non-discriminatory reasons for not hiring him were pretextual. No reasonable jury would find that TriStar failed to hire McLaughlin on the basis of age discrimination.

### IV. CONCLUSION

For the foregoing reasons, TriStar's motion will be granted by Order of Court to follow.

BY THE COURT:

_____
WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

_11/20/24_
Date