IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TIMOTHY MCLAUGHLIN,<br><br>*Plaintiff,*<br><br>v.<br><br>THE INTERNATIONAL BROTHERHOOD<br>OF TEAMSTERS, LOCAL 249, *et al,*<br><br>*Defendants.* | Civil Action No. 2:21-cv-832<br><br>Hon. William S. Stickman IV |

**MEMORANDUM OPINION**

WILLIAM S. STICKMAN IV, United States District Judge

Plaintiff Timothy McLaughlin ("McLaughlin"), a unionized professional truck driver, brought this action against multiple defendants claiming that he has been blacklisted for over a decade from work as a driver on movie and television productions in Pittsburgh, Pennsylvania. (ECF No. 41). Pending before the Court is Defendant Byron Roland's ("Roland") Motion for Summary Judgment. (ECF No. 131). Roland seeks the entry of judgment in his favor as to Count IX of McLaughlin's amended complaint against him, which is a claim of retaliation under the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. §§ 955(d) and 962(c)(1). For the following reasons, the Court will deny Roland's motion.

### I.   STANDARD OF REVIEW

Summary judgment is warranted if the Court is satisfied that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material if it must be decided to resolve the substantive claim or defense to which the motion is directed. *See*

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). There is a genuine dispute of material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The Court must view the evidence presented in the light most favorable to the nonmoving party. *Id.* at 255. It refrains from making credibility determinations or weighing the evidence. *Id.* "[R]eal questions about credibility, gaps in the evidence, and doubts as to the sufficiency of the movant's proof[]" will defeat a motion for summary judgment. *El v. Se. Pa. Transp. Auth.*, 479 F.3d 232, 238 (3d Cir. 2007).

## II.    FACTUAL BACKGROUND

McLaughlin was born in 1952. He is a professional truck driver with a Class A commercial driver's license ("CDL") and has been a member of a union, International Brotherhood of Teamsters, Local Union 249 ("Local 249" or "Union"), for over fifty years. Between 2001 and 2011, McLaughlin worked consistently as a driver on movie and television productions in Pittsburgh.[1] (ECF No. 130, p. 2; ECF No. 152, pp. 1-3; ECF No. 153, pp. 2-3). He has driven almost every piece of movie equipment, including the Grip Trailer, Camera Truck, Water Truck, Star Trailers, and PreRig Electric Trailers. (ECF No. 153, p. 2). On most movie productions he worked, McLaughlin was the elected steward. (*Id.*). The movie industry is the highest paying industry serviced by the Union, and a movie driver earns approximately $100,000 a year. (*Id.* at 3).

---

[1] Out-of-town movie and television producers hire transportation coordinators to run their transportation department on productions. The transportation coordinator, in turn, selects a captain to manage the day-to-day activities of the transportation department. A Union member can apply to be a driver on movie and television productions by submitting an annual application with the Union. For every production that comes to town, the Union supplies the production's transportation coordinators and captains with all current applications on file of Union members seeking work as a driver. (ECF No. 153, pp. 4-5).

In 2012, McLaughlin suffered a severe injury while working as a driver for Giant Eagle – both of his quadriceps detached from his legs. From 2012 to 2018, McLaughlin did not work. According to McLaughlin, driving was not the issue. He has difficulty loading or unloading trucks by hand. Despite submitting annual applications and maintaining his CDL, McLaughlin has not worked as a movie driver since 2011. McLaughlin has worked for First Student, Inc. as a school bus driver since 2018, and he is represented by the Union. (ECF No. 130, p. 4; ECF No. 152, pp. 14-16; ECF No. 153, p. 3).

Roland was born in 1958. He was a certified diesel technician and a state inspection mechanic who worked as a heavy equipment supervisor for heavy equipment mechanics before becoming a shop supervisor. During the mid-2000s, Roland became a driver on movie and television productions. In 2006, he became a member of Local 249. (ECF No. 130, p. 3; ECF No. 152, pp. 10-11). Between 2007 and 2011, Roland and McLaughlin worked together on ten productions. (ECF No. 153, p. 6).

In 2011, Roland was the transportation captain reporting to transportation coordinator Marc Scott ("Scott") for the production of *Perks of Being a Wallflower* ("*Perks*"). (ECF No. 153, p. 6). According to McLaughlin, Scott told him that experienced drivers frequently called him for work but Scott "doesn't want all those old guys around." (*Id.* at 6-7). McLaughlin was not hired for *Perks*, and in December 2011, he (then age 59) filed an intake questionnaire with the Equal Employment Opportunity Commission ("EEOC") against Summit Entertainment ("Summit") for the *Perks* failure-to-hire. McLaughlin alleged that Roland and Scott failed to call him (and other older drivers) to work despite being senior drivers, and instead, hired "much younger, inexperienced drivers." (*Id.* at 7). A formal charge of age discrimination was filed in January 2012 ("2012 EEOC Charge"). (*Id.* at 8). In March 2015, McLaughlin filed a *pro se*

3

federal lawsuit against Summit, *McLaughlin v. Summit Ent. LLC*, No. 2:15-cv-00355 (W.D. Pa.), alleging age discrimination. The case settled in August 2016. (*Id.* at 10).

Sometime after 2014/2015, Roland became a transportation coordinator for various production companies. In this role, he oversaw the entire transportation department for a production, procured equipment, hired drivers, and monitored all of the transportation information for the production. Prior to hiring any drivers for a production, Roland would obtain copies of all driver applications on file at the Union. Typically, there were approximately 200 applications on file for drivers.[2] Roland reviewed the applications with his transportation captain and chose drivers based on a number of factors such as qualifications, referrals from other drivers, special equipment needs, and his previous experience with the applicants. He had a core group of drivers he liked to hire. (ECF No. 130, pp. 4-5; ECF No. 152, pp. 16-20).

In 2015, Roland served as the transportation captain on *Banshee* and made driver hiring decisions. (*Id.* at 10). McLaughlin reached out to the out-of-town transportation coordinator, Neil Castles, with whom he previously worked and enjoyed a good relationship, and Castles indicated he would recommend McLaughlin for a job. Castles asked Roland to hire McLaughlin, and Roland refused. (*Id.* at 10-11). According to McLaughlin, when he asked Castles why he

---

[2] Around 2010, McLaughlin began to complain about the Union's use of the producer's choice ("Producer's Choice") system, which was a nonexclusive referral system adopted by the Union. It involved the Union sending the production companies who entered into a collective bargaining agreement with it all the applications on file for drivers who wanted to work on productions. The production companies retained the sole hiring discretion. (ECF No. 153, p. 5). In June 2011, McLaughlin proposed that the Union adopt a seniority-based system for movies like other unions utilized. (*Id.* at 7). Over the next decade, he continued to criticize the Producer's Choice system by writing letters and emails to various Union officials and members. He also filed charges of age discrimination and retaliation with the EEOC and the Pennsylvania Human Relations Commission ("PHRC"), followed by lawsuits alleging the same. (ECF No. 153, pp. 4-12); *see also McLaughlin v. 20th Century Fox Film Corp.*, No. 2:15-cv-00353 (W.D. Pa.) (filed 2015, settled 2017); *McLaughlin v. Boss Prod.*, No. 2:15-cv-00354 (W.D. Pa.) (filed 2015, settled 2016); *McLaughlin v. Summit Ent. LLC*, No. 2:15-cv-00355 (W.D. Pa.) (filed 2015, settled 2016).

was not hired, Castles replied: "Simple.   The local appointed the captain which is Byron Roland." (*Id*. at 11).   Roland contends that at the time Castles mentioned McLaughlin, he already had the drivers he needed for his crew.  (ECF No. 160, p. 3).

McLaughlin complained to Local 249 via letter dated May 1, 2015 ("2015 Union Complaint"), that Roland retaliated against him for a prior EEOC charge of age discrimination. (ECF No. 153, p. 11).   Local 249 President Michael Ceoffe ("Ceoffe") responded to McLaughlin's complaint on May 20, 2015, stating that the "producer will determine who to hire, and the captain then follows the producer's instructions to contact the individuals who are being selected." (*Id*. at 11-12).  After Ceoffe was voted out of office at the end of 2017, Roland hired Ceoffe as a driver in 2018 on *One Dollar* despite Ceoffe's lack of driver experience.  (*Id*. at 12).

In 2017, Roland served as the transportation coordinator for *Gone*, and McLaughlin was not hired.  (*Id*. at 11).  In 2018, Roland served as the transportation coordinator for *One Dollar*, and McLaughlin was not hired.  (*Id*. at 12).   On August 10, 2018, McLaughlin filed a charge with the National Labor Relations Board ("NLRB") ("2018 NLRB charge") against Roland and the *One Dollar* producer (CBS Studios, Inc.) that read: "Transportation coordinator Byron Roland continues to retaliate against me while conspiring with ex Teamster officials [former Presidents Rossi and Ceoffe] to deny me employment." (*Id*. at 12).  McLaughlin was of the opinion that Roland continued to retaliate against him because of his prior EEOC charge.  (*Id*.).

In September 2018, Roland directed his transportation captain, John Pishko, to contact McLaughlin and offer him work as a driver on *One Dollar*.  McLaughlin turned down the offer because he was out of town at his grandson's baseball tournament, and he expected to get hired on a long term production due to the new Union leadership.  (ECF No. 130, p. 5; ECF No. 152,

pp. 23-27). He also believed that the job was just for "day play" (i.e., for a couple days of work). (ECF No. 153, p. 13).

In January 2019, McLaughlin filed a *pro se* charge with the EEOC ("2019 EEOC charge") against CBS Studios, Inc. ("CBS") complaining about Roland's failure to hire him for *One Dollar* and his belief that Roland continued to deny him employment opportunities (i.e., "I believe Eye Production's transportation coordinator Byron Roland continues to retaliate against and blacklist me for filing EEOC and other charges against companies he and his associates have represented, by continuing to deny me employment while hiring much less experienced drivers."). (ECF No. 155-2, p. 91). The EEOC never processed the charge, which Roland believes was due to the COVID-19 governmental shutdown. (ECF No. 153, pp. 14-15). In February 2019, McLaughlin again complained to the Union about Roland's retaliation via letter. (*Id.* at 15). Roland served as the transportation coordinator for *I'm Your Woman*, which was in production from October 2019 to December 2019, and McLaughlin was not hired. (*Id.*).

In 2020, Roland served as the transportation coordinator for *American Rust* Season 1, and McLaughlin was not hired. (*Id.* at 16). From January 2020 to March 2020, Roland hired 35 drivers including his wife and son.[3] He based his hiring decisions on qualifications (Class A/Class B), his experience with the driver, and special equipment needs. (*Id.* at 16-19). The production of *American Rust* Season 1 started briefly during January 2020, but was suspended as a result of the COVID-19 pandemic. (*Id.* at 22). In June 2020, McLaughlin dual filed an age discrimination and retaliation charge with the EEOC and PHRC ("2020 EEOC/PHRA charge") naming Local 249 and other individuals. Allegations as to Roland's failure to hire McLaughlin

---

[3] 5 drivers did not have a CDL, 6 drivers had lower level Class B CDLs, and at least 2 drivers had little or no movie driving experience. (*Id.* at 18-19).

for *American Rust* were included within the body of the charge. (ECF No. 130, pp. 5-6; ECF No. 152, pp. 26-34, 36; ECF No. 153, p. 14).

During the week of January 2021, *American Rust* began prepping for production, and drivers were hired over the course of the next few months. Roland hired 47 drivers for the production. 31 drivers from 2020 were rehired. Only 5 drivers were hired after June 24, 2021. On June 24, 2021, Roland needed another driver and instructed the transportation captain, David Waldon ("Waldon"), to offer McLaughlin a position. (ECF No. 130, pp. 6-7; ECF No. 152, pp. 34-39; ECF No. 153, pp. 22-25). The following text message exchange occurred between Waldon and McLaughlin:

> June 24, 2021 at 6:33 PM
>
> Don't answer unknown calls
>
> June 24, 2001 at 9:56 PM
>
> well do you want to work
> you put app in at 249 yes
> i'm David Walden captain on rust
>
> Sorry Dave this is Tim McLaughlin I
> just saw your message.
> I appreciate the call but I will be out of
> town until July 14th. I will be available
> then if you still need me.
>
> > copy thanks call me when you can
> > work
>
> Just curious Dave
> Does Byron know you called me to
> work

(ECF No. 130, p. 7; ECF No. 152, pp. 39-40). According to McLaughlin, he declined the position because he thought that production was close to wrapping up, the offer was only for a few days of work, and that there was no guarantee of long-term work. (ECF No. 153, p. 25-25).

On June 28, 2021, McLaughlin filed this lawsuit. (ECF No. 130, p. 7; ECF No. 152, p. 40). On September 16, 2021, Roland texted McLaughlin as follows about "day play" work for *American Rust*,

> Sep 16, 2021 at 3:19 PM
> Hey Tim, this is Byron.
> I have some day
> play work next week
> if you are interested.
> Let me know please.

(ECF No. 130, pp. 7-8; ECF No. 152, pp. 41-42; ECF No. 153, p. 26). McLaughlin never responded. (ECF No. 130, p. 8; ECF No. 152, pp. 42-43). Production for *American Rust* had ended in August 2021. (ECF No. 153, pp. 22-23, 26).

### III.    ANALYSIS

McLaughlin alleges that Roland retaliated against him in violation of the PHRA by failing to hire him for *American Rust*. With discovery now concluded, Roland moves for judgment in his favor. The Court finds that there are too many disputes of material facts as to McLaughlin's claim against Roland. It is for a jury, not the Court at the summary judgment stage, to assign the proper weight to the parties' conflicting evidence.

The PHRA makes it unlawful for any person, employer, or labor organization "to discriminate in any manner against any individual because such individual has opposed any practice forbidden by [the PHRA], or because such individual has made a charge, testified or assisted, in any manner, in any investigation, proceeding or hearing under [the PHRA]." 43 P.S. § 955(d). Retaliation claims under the PHRA based on circumstantial evidence are subject to the *McDonnell Douglas* framework. *See Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 193 (3d Cir. 2015). The plaintiff must first establish a prima facie case of retaliation by showing: (1) protected employee activity; (2) adverse action by the employer after or contemporaneous with

the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action. *Id.* If the plaintiff makes these showings, the burden of production shifts to the employer, who must present a legitimate, nonretaliatory reason for the adverse action. *Id.* at 193. If the employer does so, the burden shifts back to the plaintiff to show that the employer's articulated reason was false, and the real reason was retaliation. *Id.*

McLaughlin has also come forth with evidence of protected activity, including filing administrative charges of discrimination (2012 EEOC Charge; 2018 NLRB Charge; 2019 EEOC charge; June 2020 EEOC & PHRC charge), litigating three federal lawsuits alleging violations of the ADEA, and complaining internally to the Union about age discrimination (2015 Union Complaint; 2019 Union Complaint). *See Fasold v. Justice*, 409 F.3d 179, 188-89 (3d Cir. 2005). The United States Court of Appeals for the Third Circuit has held that the filing of formal charges, in addition to "informal protests of discriminatory employment practices, including making complaints to management," *Curay-Cramer v. Ursuline Acad. of Wilmington, Delaware, Inc.*, 450 F.3d 130, 135 (3d Cir. 2006) (citation omitted), are protected activities. Furthermore, "although a plaintiff in a retaliation case need not prove the merits of the underlying discrimination complaint, [he] must have act[ed] under a good faith, reasonable belief that a violation existed. This standard requires an objectively reasonable belief that the activity the plaintiff opposed constituted unlawful discrimination under the relevant statute." *Daniels*, 776 F.3d at 193–94 (cleaned up). In other words, a plaintiff must present evidence that a reasonable person, standing in their shoes, would believe that they were standing in opposition to discrimination on the part of the defendant. *See Kengerski v. Harper*, 6 F. 4th 531, 537 (3d Cir. 2021). There is sufficient evidence in the record that McLaughlin did so. He possessed a firm belief that he was being discriminated against by Roland because of his age and continual

complaints about hiring practices for drivers on productions.  The Court holds that McLaughlin has established the first element of his prima facie case.

To satisfy the second element of a prima facie retaliation case, "the plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  *Daniels*, 776 F.3d at 195 (internal quotation marks and citation omitted).  The challenged conduct is examined "from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances.'"  *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. 53, 71 (2006) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)).  McLaughlin argues that the materially adverse action was Roland's failure to hire him for *American Rust* on two occasions: "(1) from January 2020 to March 2020 when [Roland] hired 35 drivers, and (2) from January 2021 to June 2021 when [Roland] hired 47 drivers." (ECF No. 154, p. 15).  McLaughlin further contends that Roland's offer of work through Walden (for "day pay," and not long-term work) on June 24, 2021 (and on June 28, 2021) did not cure the prior failures-to-hire in 2020 and early 2021.  (ECF No. 154, pp. 15-16).  The Court holds that Roland's evidence as to adverse employment actions is sufficient to satisfy the second element of the prima facie case.

As to the third element, a plaintiff may show causation in any of the following three manners:  (1) by the timing of the adverse action in relation to the protected activity; (2) by a pattern of animus during the interval between the protected activity and the adverse action; or (3) through other circumstantial evidence concerning the employer's motivation, including inconsistent reasons given by the employer or the employer's treatment of other employees. *Theriault v. Dollar Gen.*, 336 F. App'x 172, 175 (3d Cir. 2009) (citation omitted).  Thus, in

proving a causal link between protected activity and adverse action, McLaughlin may rely on "a broad array of evidence." *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 284 (3d Cir. 2000).

McLaughlin has come forth with evidence that would allow a reasonable jury to find a causal connection between his protected activity and not being hired for *American Rust*. First, he contends that evidence exists that Roland knew about the 2012 EEOC charge and the 2018 NLRB charge, and that a jury could conclude that Roland knew at the time of the adverse employment actions that McLaughlin had complained about him. (ECF No. 154, pp. 16-18). Second, McLaughlin acknowledges that "[t]here is an eight (8) year gap between the 2012 EEOC Charge and the 2020 failure-to-hire, and an eighteen (18) month gap between the 2018 NLRB retaliation Charge and the 2020 failure-to-hire." (*Id.* at 18). But he submits that his evidence demonstrates that Roland's first opportunity to retaliate for the 2012 EEOC charge occurred in 2015 when Roland failed to hire McLaughlin for *Banshee*. And Roland's first opportunity to retaliate against McLaughlin for the 2018 NLRB charge occurred in 2019 when he failed to hire McLaughlin for *I'm Your Woman*. (ECF No. 154, pp. 18-19). Roland then continued to fail to hire McLaughlin at the start of six jobs where Roland was the coordinator: *Banshee* (2015); *Gone* (2017); *One Dollar* (2018); *I'm Your Woman* (2019); *American Rust* Season 1 (2020); and *American Rust* Season 1 (2021). McLaughlin contends that this period of antagonism supports an inference of causation. The Court concurs.

McLaughlin has adduced evidence of a history of antagonism with Roland as well as temporal proximity (with intervening failures to hire) between his 2019 EEOC charge, his 2019 complaint to the Union, and the 2020 failure to hire, as well as the 2020 EEOC/PHRA charge and the 2021 failure to hire. He has adduced sufficient evidence of a suggestive timeframe that could establish a causal link for a factfinder. Also, McLaughlin is older than 60 (being born in

1952), has extensive experience as a movie driver, and has adduced evidence that he was passed over on a number of occasions under circumstances that give the appearance of longstanding animosity. He has garnered evidence that less qualified and/or significantly younger individuals were hired by Roland. Because a factfinder could reasonably infer a causal connection between McLaughlin's protected activity (i.e., filing administrative charges of discrimination, litigating three federal lawsuits, and complaining internally to the Union about discrimination) and not being hired for a driver position on *American Rust*, the Court holds that the third element of the prima facie case has been satisfied.

The Court must next consider whether McLaughlin has produced sufficient evidence to establish a triable fact on pretext. It is not to weigh the evidence on summary judgment or assess its truthfulness. There is no dispute that Roland has articulated nondiscriminatory reasons for not hiring McLaughlin for *American Rust*.[4] According to Roland, although he "believed Mr. McLaughlin was a good driver, he thought that Mr. McLaughlin was not a go-getter," and that McLaughlin "would sit in his truck/talk to the guys when other work needed to be done. (ECF No. 132, pp. 14-15). He contends that McLaughlin refused work in September 2018 at the end of the *One Dollar* production and then refused work on *American Rust* on June 24, 2021, and again on June 28, 2021. It is his position that McLaughlin has not adduced evidence that demonstrates a retaliatory motive, and the evidence instead shows that "McLaughlin's own actions/inactions … were the reasons for his lack of employment on "American Rust." (ECF No. 160, p. 15).

---

[4] Having established a prima facie case of retaliation, the burden shifts to Roland to provide a legitimate non-retaliatory reason for his conduct. *Moore v. City of Philadelphia*, 461 F.3d 331, 342 (3d Cir. 2006); *see also McDonnell Douglas Corp.*, 411 U.S. at 802.

To withstand summary judgment, McLaughlin must "convince the factfinder that the employer's proffered explanation was false [that is, a pretext], and that retaliation was the real reason for the adverse employment action. *Moore*, 461 F.3d at 342. McLaughlin cannot simply show that Roland's decision was wrong or mistaken. *Fuentes v. Perskie*, 32 F.3d 759, 756 (3d Cir. 1994). Rather, he "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in Roland's proffered legitimate reasons for his action that a reasonable jury could infer that Roland did not act because of the legitimate, non-discriminatory reason. *Id.* The Court is satisfied that McLaughlin has sufficiently done so to defeat Roland's summary judgment motion. He has pointed to several pieces of evidence purportedly demonstrating that Roland's explanation was false, and a factfinder could infer that retaliation was the real reason for Roland not hiring McLaughlin for a permanent driver position on *American Rust*.

McLaughlin has come forth with evidence as to why he declined work on *One Dollar* in September 2018, *American Rust* in late June 2021, and *American Rust* in September 16, 2021. Most notably, all of the job offers were for "day pay," and not long term driving work. As to the September 16, 2021 offer, he argues "[a] reasonable jury could find that the offer was made in bad faith since there was no actual ongoing work and reflected animus because it was made less than three weeks after Roland learned that McLaughlin had filed this lawsuit filed against him." (ECF No. 154, p. 21). Additionally, Roland has adduced evidence calling into question Roland's hiring criteria for *American Rust* in January-March of 2020 and in early 2021 – i.e., that younger, less qualified, and less experienced drivers were hired by Roland. McLaughlin has also adduced evidence of his good performance as a driver to rebut and call into question Roland's belief that he was not "a go-getter," and sat in his truck while other guys worked. (ECF No. 154, pp. 22-

13

23). Added to all this, McLaughlin has adduced evidence that he believes proves Roland knew about his charges of discrimination and retaliation throughout the years and that Roland retaliated against him when he had the opportunity to do so.

The evidence that McLaughlin has come forth with could permit a factfinder to conclude that a retaliatory animus was the real reason for Roland's decision not to hire McLaughlin on *American Rust*. A factfinder could conclude that the real reason Roland did not hire McLaughlin was because of his continual complaints about discrimination and retaliation. This is all to say that viewing the evidence in the light most favorable to McLaughlin, it is sufficient to defeat Roland's summary judgment motion.

## IV.    CONCLUSION

For the foregoing reasons, Roland's motion will be denied by Order of Court to follow.

BY THE COURT:

WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

11/20/24
Date